CHARLES H. MAYER

*v.*

SAMUEL KANE et al.

[Decided June 14th, 1905.]

1. Where a wife did not know that her husband had taken the title to property, for which she furnished the purchase-money, in his name, instead of in hers, she is not estopped to assert title as against his creditors.

2. As between a wife and creditors of her husband, she is entitled to have a resulting trust in real estate, in the absence of any estoppel, to the extent of her contribution toward the purchase price, and to the extent that her money has been used for repairs, taxes, &c., over and above her proportion of the purchase price.

3. Money received by a wife from the keeping of boarders or otherwise, not acquired by her in a business carried on separately from her husband, and contributed toward payment of an encumbrance on real estate owned in common, inures to the husband's benefit.

---

This is a bill filed by Charles H. Mayer against Samuel Kane and Sarah, his wife. The purpose of the suit is to have declared fraudulent and void two certain conveyances of real estate made by the husband to the wife through an intermediary. These conveyances took place respectively on the 3d of October, 1903, and on the 26th of October, 1903.

The complainant is a judgment creditor of Samuel Kane, and has a judgment against him for four hundred odd dollars, which was obtained in 1904, and under which an execution was issued and levied upon the premises in question.

Heard on bill, answer and proofs in open court.

*Messrs. Grey, McDermott & Enright,* for the complainant.

*Mr. Max Salinger,* for the defendants.

GARRISON, V. C.

In 1869 Samuel Kane was married to Sarah Muller. She had been a servant up to the time of her marriage and had accumulated some money, and had in the neighborhood of $1,000 in a savings bank in the city of New York. He was a driver in receipt of $14 a week wages. They lived in New York City for four years after their marriage. Beginning with the end of the first year there was a boarder in the family, and the wife received the money from this boarder.

In 1873 they learned of a piece of property, No. 101 Stuyvesant avenue, Jersey City, which was for sale, and they came here to inspect it. Subsequently a bargain was made by which the property was to be acquired for $2,300, of which $1,200 was represented by an existing mortgage, which was assumed, $300 by a second mortgage, and the balance, $800, was paid in cash.

The wife gave to the husband this $800 and he had the property conveyed to himself, thereby assuming the existing mortgage of $1,200, and he gave a $300 purchase-money mortgage, due in one year.

Both the husband and wife testified that the property was bought for the wife, and that she was led to believe that the title was in her name. She can neither read nor write, and is dense.

They moved into the house, and she continued to take boarders, and her testimony and that of her husband is that she gave to him, from moneys other than those that he gave her from his wages, $300 with which he paid off the $300 purchase-money mortgage.

Each of them was an owner of ten shares of stock in a building association in Jersey City.

The original $1,200 mortgagee, desiring his money, the husband pledged his stock with the building association, and he and his wife gave a mortgage to the building association for $1,400 and took this money and paid off the mortgage. Whether the whole of it was taken for this purpose—that is to say, whether there was interest accumulated on the mortgage to the extent of $200—does not appear.

The husband went on paying off the shares in the building

association, and when they were paid off the mortgage was canceled.

The wife testifies that she repaid $1,000 to the husband on account of this money.

Her testimony concerning this is very indefinite. She was under the impression, she said, that this mortgage was $1,000, and she testified that the mortgagee wanted the money, and her husband raised it and paid it off, and she paid it back to the husband in installments. But upon inquiry as to the method and manner and fact of this repayment her answers were very unsatisfactory, and I am not inclined to believe that she did repay this money.

The wife always collected and kept the rents from this property when the same was rented—that is to say, when they themselves were not living in it. She and her husband each testify that she always paid the taxes, or rather, that she gave him the money to pay the taxes. It appears that he did not pay the taxes, and that the property was advertised to be sold under the Martin act, and that she borrowed $700 on her shares from the building association and paid the taxes with this money.

When her building association shares matured she took the balance, $1,300, and expended it upon repairs upon this property and, I understand, also upon the property next hereafter to be mentioned.

This other property was acquired in 1887.

The testimony is that the purchase price was $2,200. The fact is that $400 was paid in cash and $1,800 was represented by an existing mortgage. This $400, the defendants say, was made up of $160 that the wife had received from an insurance company upon a policy held upon the life of her aunt, $100 was money that the wife borrowed from some stranger, and $140 was her savings out of moneys from boarders and rent, over and above the weekly money given her by her husband to pay household expenses.

The testimony of the defendants is that the wife paid all the repairs and all the taxes that were ever paid upon these properties.

Some time in September or October, 1903, the defendants were desirous of borrowing $1,600 upon the property 101 Stuyvesant avenue, which was, as we have seen, now clear of all encumbrance. The wife testifies that she wanted some little money, but this is discredited by the fact that she did not get any and that the husband testified that he took all the money to pay his debts with. However this may be, it is a fact that by a mortgage, acknowledged on the 23d of October, 1903, made to the New Jersey Title, Guarantee and Trust Company, the company advanced $1,600 in a check which was made out to Mrs. Kane, and which she turned over to her husband, and which he had cashed, and the proceeds of which he paid to his creditors.

It was during the negotiations for this mortgage that the wife says she, for the first time, learned that the title to either of these properties was not in her name, and it was because of the knowledge thus gained that she insisted upon her husband transferring the titles to her.

The insistment of the defendants is that Mrs. Kane advanced the money to her husband to make each of the purchases, and that there was a resulting trust to her in each instance, and that when the legal title was conveyed to her there was a joinder of the legal and equitable estate in her, and that such estate was not subject at any time to the creditors of her husband.

The contentions of the complainant are that there was no resulting trust, and that the properties were the husband's, and that if the wife has any right at all, it is for the amount of money of hers that she put into the property, and this amount, they contend, is only the first payment of $800, with respect to the first property, and is only $260 (that is, the insurance money and the borrowed money) put into the second property. They contend that since she permitted her husband to have this title in his own name, and thus apparently to be the owner thereof, she is estopped to deny as against them that he was the owner.

The case is not without difficulty. I find that in the main the wife truthfully stated the circumstances. In only one par-

ticular do I find that she was untruthful. I am not satisfied, as I before stated, that she paid off, out of her own moneys, the mortgage of $1,200 that rested upon the first property at the time they bought it.

I find that she believed that her husband had purchased the properties in her name, and that she did not learn until October of 1903 that they were not in her name.

There is not, therefore, present in this case the element of participation on the part of the wife which causes the application of the principle illustrated in the cases cited in the case of *Mertens* v. *Schlemmc, 68 N. J. Eq. 544 (Vice-Chancellor Garrison, 1905)*. These cases all rest upon a finding of fact that the wife permitted her property to stand in the name of her husband, and by that fact is estopped to deny, as against his creditors who trusted him upon the faith of his apparent ownership, that he was the owner.

Since there is no occasion to apply the doctrine of estoppel to the wife in this suit, then the equities of the creditors of the husband and the equities of the wife must be adjusted with respect to each other.

Each of these is entitled to an equity.

In view of the decisions, I think that the equities of each are as follows:

The wife is entitled to have, in her favor, a resulting trust in the property to the extent of her contribution towards the purchase price thereof, and also to the extent that her own money has been used in keeping down encumbrances and in improvements and repairs over and above her proportion thereof. In other words, I find that the disposition of our courts is to treat a husband and wife, situated as these are, as owners in common, each holding an interest in the property in proportion to the amount of purchase price advanced by each; and further, that where a wife's separate estate is contributed towards the improvement of such property (and no estoppel is effected) she is also entitled, as against the husband and his creditors, to a lien for repayment of such sums.

The equity of the creditor is to have a lien upon whatever interest the husband has in the property.

This is the result of the general principle that a wife, whose money is used by a husband in the purchase of real estate, has a resulting trust therein, for which no citation is necessary, and of the principle laid down in the case of *Wheeler & Wilson Manufacturing Co.* v. *Litwin*, *57 N. J. Eq. (12 Dick.) 660 (Court of Errors and Appeals, 1898)*, and in *Adoue* v. *Spencer, 62 N. J. Eq. (17 Dick.) 782 (Court of Errors and Appeals, 1901)*.

The rights of the creditors are commensurate with the rights of the husband.

The application of these principles to the case in hand results as follows:

Respecting 101 Stuyvesant avenue: The wife paid all of the cash consideration that was paid at the time of the purchase, namely, $800. There was given at that time by the husband a purchase-money mortgage for $300, and in the deed which he accepted, and which ran to him, he assumed the payment of a $1,200 mortgage then on the property.

Since the wife had no separate source of income during the year elapsing between the time of the purchase and the time of the payment of the $300 mortgage, I hold that this payment must enure to the benefit of the husband. My reasons for this are that, while the wife may have had the money in hand as the income from boarders or otherwise, she did not acquire it in any business carried on separately from her husband, and hence cannot claim that her husband took her money and owes her therefor. *Clinton, &c., Manufacturing Co.* v. *Hummell*, *25 N. J. Eq. (10 C. E. Gr.) 45 (Chancellor Runyon, 1874)*.

This results in finding that the wife's interest in 101 Stuyvesant avenue is eight hundred-twenty-three hundredths and the husband's is fifteen hundred-twenty-three hundredths.

From the time of the purchase to date the testimony shows that the wife has collected all of the rents and has also paid all of the taxes that have been paid. With respect to these, I find that equity requires that she should be charged with all of

the rents and credited with eight hundred-twenty-three hundredths thereof, and should be credited with all of the taxes paid by her and charged with eight hundred-twenty-three hundredths thereof.

With respect to the amounts paid for repairs, I find that the wife should be credited with the whole of such amounts so paid by her and charged with eight hundred-twenty-three hundredths thereof.

The contribution by the husband to this property, *i. e.,* 101 Stuyvesant avenue, consisted in the making of the mortgage for $300 and the assumption of that for $1,200, and thus originally his interest was wholly encumbered. This situation is not changed in this suit by the paying off of these mortgages by the husband, because he subsequently obtained the whole amount, together with $100 more, for his own purposes, when he obtained the cash from the $1,600 mortgage now upon the property.

There must be a reference to a master to ascertain and report with respect to the expenditures by the wife for taxes and repairs and the receipt by her of rents. These will be apportioned as hereinbefore stated.

The respective interests of the husband and wife will then be found and declared, and the complainant will be entitled to a lien on the husband's interest in the property.

With respect to the second property, 91 and 93 Stuyvesant avenue, I find that the wife advanced $400 and the husband gave a purchase-money mortgage, dated August 23d, 1887, for $1,800, so that the respective interests in this property are four hundred-twenty-two hundredths for the wife and eighteen hundred-twenty-two hundredths for the husband.

The receipts of rent by the wife from this property and her expenditures thereon for taxes and repairs will be apportioned in the above-stated proportions, in a similar manner to that provided with respect to the first property purchased.

I will advise a decree in accordance with these views, the decree to be settled on notice.