(November 6, 1914.)

## BOISE BUTCHER CO., LTD., a Corporation, Respondent, v. ANNA V. ANIXDALE, Appellant.

[144 Pac. 337.]

CREDITOR'S BILL—PROCEEDINGS SUPPLEMENTARY TO EXECUTION—SUFFI-
CIENCY OF COMPLAINT—SEPARATE PROPERTY OF MARRIED WOMAN—
COMMUNITY PROPERTY—ESTOPPEL.

1. *Held,* that a complaint on a judgment brought against a per-
son alleged to have money of the judgment debtor in her possession,
under the authority of the order provided for in sec. 4510, Rev.
Codes, which substantially shows that the judgment was rendered
by a court of competent jurisdiction, its date, amount and the
parties thereto, and then alleges facts showing that proper proceed-
ings under the provisions of chap. 2 of title 9, providing for pro-
ceedings supplementary to execution, had been taken, that the
order provided for in said sec. 4510 had been duly obtained, and
further alleges that the defendant has money belonging to the
judgment creditor subject to execution in her possession, is suffi-
cient when tested by a general demurrer.

2. A married woman bought a meat market which was personal
property, placed her husband in possession of the shop, authorized
him to manage and control the business, buy and sell meat, receive
the money from sales and pay the bills incurred in the business and
thereafter her husband, as manager of the business, went to a
wholesale butcher company, represented himself as the proprietor of
said meat market, bought meat there, and obtained credit from
said company, which was given under the belief that he owned the
shop and the business, and his wife never notified said company of
her ownership of the property, and the company had no knowledge
of it. *Held,* that under these circumstances she is estopped from
asserting ownership to the property when it would result in the
loss of a debt contracted by her husband.

APPEAL from the District Court of the Third Judicial
District for Ada County. Hon. Carl A. Davis, Judge.

Action in the nature of a creditor's bill brought by the
respondent to subject certain money alleged to be in the hands
of the appellant to the payment of a judgment obtained
against Alfred Anixdale, her husband, under the provisions

of sec. 4510, Rev. Codes. Defendant appealed. Judgment *affirmed.*

J. C. Johnston and J. J. McCue, for Appellant.

This evidence shows that Alfred Anixdale was the agent of appellant and acted under instruction from his principal not to contract any bills upon credit, but to pay cash and do business only upon the cash basis, and that she never gave her agent any authority to buy on credit. The authority to buy does not include buying on credit. (*Berry v. Barnes,* 23 Ark. 411; *Jaques v. Todd,* 3 Wend. (N. Y.) 83; Mechem on Agency, sec. 363.)

"A principal is not bound by the acts of his agent unless authorized." (*Lewis v. Bourbon County Commrs.,* 12 Kan. 186.)

"A person who deals with an agent is bound to inquire into the extent of his authority, ignorance of which is no excuse." (*Thorsen v. Babcock,* 68 Mich. 523, 36 N. W. 723; *Baxter v. Lamont,* 60 Ill. 237; *Saginaw etc. R. Co. v. Chappell,* 56 Mich. 190, 22 N. W. 278; 1 Clark & Skyles on Agency, sec. 452.)

"Where an indebtedness is contracted by the husband and the credit given to him, the wife cannot be held liable therefor." (*Larson v. Carter,* 14 Ida. 511, 94 Pac. 825.)

"The law does not favor the divestiture of the wife's separate estate by her implied consent." (*Dozier v. Freeman,* 47 Miss. 647.)

Harry S. Kessler and Hawley, Puckett & Hawley, for Respondent.

The property and business in Boise was acquired after marriage; therefore, the *prima facie* presumption at once arises under our statute that this property was community property. (*Douglas v. Douglas,* 22 Ida. 336, 125 Pac. 796; *Humbird Lumber Co. v. Doran,* 24 Ida. 507, 135 Pac. 66; 6 Am. & Eng. Ency. of Law, 2d ed., 327, and authorities cited in note.)

The appellant, so far as respondent knew, had nothing whatever to do with the shop. She never notified the plaintiff that she was the owner and respondent probably never heard of her until it had secured a judgment against Mr. Anixdale and then she appeared on the scene and claimed it as her separate estate. Under every principle of equity, appellant is estopped from claiming the proceeds of the business adversely to the claims of respondent. (Jones on Evidence, secs. 275, 276; 11 Am. & Eng. Ency. of Law, 2d ed., 421, 422, and cases cited; *Bowen v. Howenstein,* 39 App. Cas. (D. C.) 585; Ann. Cas. 1913E, 1179.)

"An estoppel *in pais* requires, as to the one against whom the estoppel is claimed, opportunity to speak, duty to speak, failure to speak, and reliance in good faith on such failure." (*Sheffield Car Co. v. Constantine Hydraulic Co.,* 171 Mich. 423; Ann. Cas. 1914B, 984, 137 N. W. 305.)

TRUITT, J.—This action is in the nature of a creditor's bill and was brought by the Boise Butcher Co., a corporation engaged in business in the city of Boise, Idaho, to subject certain money alleged to be in the hands of the appellant, Anna V. Anixdale, to the payment of a judgment for $205.96, obtained against Alfred Anixdale, the husband of said Anna V. Anixdale, in the justice's court for Boise precinct, Ada county, Idaho, on April 18, 1913. The cause of action against said Alfred Anixdale in the said justice's court, as alleged in the complaint therein, was for meat and goods in that line of trade sold and delivered to him by the respondent company in February, 1913, while he was conducting the O. K. Meat Market in Boise, Idaho. Execution on said judgment was thereafter issued, placed in the hands of the constable of said Boise precinct, and by him returned *nulla bona.* Thereafter proceedings supplementary to the execution were had under chap. 2, title 9, Rev. Codes, in said justice's court. As provided for under the provisions of said chap. 2, the said Anna V. Anixdale and her said husband appeared in said court and were examined under oath regarding the property of said Alfred Anixdale. After this examination on or

about April 29, 1913, complaint was filed in said justice's court against said Anna V. Anixdale, and the result of said examination is stated therein in connection with other material allegations as follows: ''That an order was duly made and entered by G. G. Adams, justice of the peace of said precinct, that an action be instituted against said Anna V. Anixdale for the recovery of such money, and forbidding the transfer of the same until an action be commenced and prosecuted to judgment. That plaintiff is informed and believes from the evidence produced at the examination aforesaid that this defendant has in her possession certain money in the sum of about $900 which is the community property of this defendant and the said Alfred Anixdale, and that this defendant wrongfully and fraudulently claims said money as her sole and separate estate.''

Though, as above stated, the complaint in this action was filed in the said justice's court, it was for some reason transferred from there to the probate court of said Ada county, and the subsequent proceedings in the case were in that court. The appellant appeared therein and filed a demurrer to the complaint. This was overruled, and then she filed her answer in which the allegations of the complaint were denied, and she alleged that the said money in her hands was her separate property. The case was tried in the probate court with a jury, a verdict was rendered by said jury in favor of said company for the amount claimed in the complaint, and upon this verdict the court entered judgment in favor of said company for said amount and for costs of the action. The said Anna V. Anixdale, appellant herein, appealed from said judgment to the district court of the third judicial district of this state for Ada county. The case was tried *de novo* before the court with a jury. This jury returned the following verdict, to wit: ''We, the jury in the above-entitled cause, find for the plaintiff and against the defendant and assess plaintiff's damages at $205.96, and interest amounting to $4.80, making a total of $210.76 and costs of suit.'' The court entered judgment against the said Anna V. Anixdale, and in favor of said Boise Butcher Co. in accordance with said verdict, and

also ordered her to pay from said money in her possession the amount of said judgment so entered against her. From this order and judgment this appeal is taken by said Anna V. Anixdale as appellant.

There are seven errors specified by appellant on the motion for a new trial and urged upon the trial court as grounds for setting aside the judgment, and these errors are set out at great length in appellant's brief herein. The first error presented by the brief of appellant is that the complaint does not state facts sufficient to constitute a cause of action; that it is ambiguous and uncertain; and, further, that there is another action pending.

The complaint is brought under the provisions of sec. 4510, Rev. Codes, and we think it states a cause of action as specially provided for by that section. In substance, it alleges that the plaintiff obtained a judgment to secure the payment of which the action was brought, states the court wherein it was obtained, the date, and the amount of the judgment. It also alleges that execution was issued on said judgment and placed in the hands of the officer for service, and that he returned it *nulla bona;* that thereafter the defendant and her husband, Alfred Anixdale, appeared in court on proceedings supplementary to execution, and were examined under oath regarding the property of the said husband. It further alleges that an order was then duly made directing that an action be instituted against said defendant, Anna V. Anixdale, for the recovery of the amount of money necessary to satisfy said judgment. It then alleges that from the evidence produced at said examination the plaintiff is informed and believes that said defendant has in her possession $900 which is community property of the defendant and said Alfred Anixdale, that she wrongfully and fraudulently claims the same as her separate property. It states the amount of the judgment sued on and demands a judgment such as is provided for by said statute. We think the complaint sufficient when tested by a general demurrer. (*High v. Bank of Commerce,* 95 Cal. 386, 29 Am. St. 121, 30 Pac. 556; *Spaulding v. Coeur D'Alene Ry. etc. Co.,* 6 Ida. 638, 59 Pac. 426.)

The complaint does not seem to be ambiguous, and the objection that another action was pending was set up in the answer and disposed of at the trial.

The second and third errors assigned are as to the sufficiency of the evidence to sustain the verdict of the jury. This calls for an examination of the evidence in the case as brought up by the transcript. The principal witness at the trial in the court below was appellant, Anna V. Anixdale. Her testimony details the lives and business transactions of herself and husband, Alfred Anixdale, from about the time of their marriage at Bellingham, Wash., in 1907, to the time that they arrived in Boise, Idaho, which was sometime in May, 1912. But we do not think for the purpose of reaching a conclusion in this case that it is necessary to review or consider that part of her testimony in this opinion. When she and her husband arrived in Boise, she had about $1,800, which she deposited in her own name in the Boise City National Bank. She testifies that this was her sole and separate property, and we think the weight of the testimony fully proves that it was her own separate property. She and her husband had for a good part of the time during their married life been engaged in the retail butcher business at places where they had resided, and she seems to have been inclined to engage in that business again. However that may be, she did soon after arriving in Boise purchase in her own name and take charge of the fixtures of the O. K. Meat Market in this city. She also bought a residence, also situated in Boise, in the same trade by which she secured the meat market. She at once opened up the market and engaged in the retail butcher business, and continued it until sometime in April, 1913, when the shop in which she did business with all its fixtures and stock in trade was destroyed by fire. The Anixdales seem to have made a kind of family arrangement at the time the meat market was opened for business, whereby she put her husband in full charge and management of the market and she kept the home and did the ordinary housework. Concerning the business of the market or shop, Mrs. Anixdale testified as follows: "Q. Now, who took charge of

the shop? A. I had my husband run it for me. Q. Who did all the buying? A. He did. Q. Who paid the bills? A. He did. Q. Who was in charge of the business? A. He was running it for me. Q. Did you pay any bills by check? A. Yes, sir. Q. Who signed the checks? A. He signed the checks for me. Q. How did he sign them? A. A. V. Anixdale. Q. Didn't put it by him? A. I don't understand. Q. He didn't sign his name after yours? A. No, sir. Q. He just signed the checks A. V. Anixdale? A. Yes, sir. Q. And did you ever go to the Boise Butcher Co. to buy any meat? A. No, I have never been inside it. Q. Did you ever notify the Boise Butcher Co. that you were the owner of the business? A. I had no occasion to.''

It further appears from the testimony that Alfred Anixdale immediately after taking charge of the O. K. Meat Market went to the appellant company's office for the purpose of making arrangements to secure meats and other goods which he might need in the retail butcher business of them. And in connection with this point in the case, William Lomax, who was the secretary and treasurer of the Boise Butcher Co., testified as follows:

''Q. Are you acquainted with Mr. Alfred Anixdale? A. Yes, sir. Q. When did you first become acquainted with Mr. Anixdale? A. First got acquainted with Mr. Anixdale in May, 1912, the first time I ever saw him to know him. He was in the market speaking with Mr. Sweitzer, and I came to the wholesale counter where they were talking and Mr. Sweitzer introduced Mr. Anixdale to me as being the proprietor—the new proprietor of the O. K. Market. That is the first time I ever remember meeting Mr. Anixdale to know him. Q. You say that was in May, 1912? A. That was in May, 1912. Q. What was his business? A. He was running the O. K. Meat Market at that time, that is, he had just bought it from Mr. Beemer. Q. What was his particular business in your shop at that time? A. He was making arrangements with Mr. Sweitzer about buying meats and wanting to commence to trade there with us. Q. Did your company sell him meat after that? A. Yes, we did business

with Mr. Anixdale from that time on up to the time he burned out, which was in February, well, we did business with him up to February 22d, I think that was our last statement. He burned out on the 23d. We were doing business with him at that time. Q. What year? A. 1913. . . . . Q. Who was in charge of the market? A. Mr. Anixdale. Q. Who paid the bills? A. Mr. Anixdale. Q. How did he pay them? A. Why, usually he would come in and pay with cash or an accumulation of checks which he might have taken in; he generally paid cash that way. Sometimes there would be some money and some checks. Those he happened to have taken in during Saturday perhaps or during the week."

It must be borne in mind that these were the only witnesses that testified concerning this part of this business matter, that there is no conflict in their testimony and that it stands absolutely unimpeached.

From this testimony and all the circumstances of the case, it does not appear that the respondent company had any knowledge or information or that there was anything unusual in connection with this whole transaction that would put a careful, prudent man on inquiry as to the ownership of the business of the O. K. Meat Market. The company knew the property had been sold by its former owner Beemer; Alfred Anixdale came to the company's place of business to arrange for buying stock for the trade of his meat market. He was introduced to Mr. Lomax, an officer of the company, as "the new proprietor" of the O. K. Meat Market; he then and there arranged to buy meats of the company and continued to order such stock of it from time to time as he needed the same for the business. He was managing the business, he bought and sold, he collected for goods sold, and paid the company each week for goods purchased of it. In short, he had all the *indicia* of ownership, and there was absolutely nothing to arouse suspicion or put the company on inquiry. It probably had numerous customers, and it is not likely that any other one of them conducted a business for his wife. Such a thing is unusual. But the said company acted on the presumption that Alfred Anixdale was in fact the owner of the

O. K. Meat Market, and all his actions were consistent with that presumption. His manner of transacting the business was in no way unusual. It was similar to that of other customers of the company. If the appellant wanted the company to know the real facts regarding the ownership of the property, it was her duty to inform it. The officers of the company never thought of going to her to inquire if she owned the property. There was nothing whatever to suggest such an inquiry. Moreover, this meat market was only personal property, and there was no record, as in case of real property, to give notice of her ownership. But it is submitted by appellant that as the testimony shows that Alfred Anixdale sometimes turned in checks signed "A. V. Anixdale," that should have caused the officers of the company to make some inquiry concerning them. But we see nothing in this fact to arouse suspicion or cause inquiry. These checks were made in his own handwriting, and signed by Alfred Anixdale with his wife's initials. If the officers of the company gave the matter any thought at all, they must have thought that Alfred Anixdale signed them with his own initials and that they were his own checks on his own bank account.

The jury in the court below must have found their verdict in this case on the theory that either this money in controversy was community property, or that if it was not community property, then the appellant by her actions and silence while her husband was managing and conducting the O. K. Meat Market as the proprietor and owner thereof, induced the respondent to believe him to be such, and for that reason to give him credit for the goods sold to him, and that therefore she is now estopped from denying that it is community property to the injury and loss of the respondent. We think the evidence is sufficient to sustain the verdict on that theory and that this was a proper question for the jury. "What is said in the hearing of a party is evidence, but it is the province of the jury to draw proper inference from his conduct or silence." (*Morrill v. Richey,* 18 N. H. 295.)

It is perfectly evident from the testimony that by her neglect in not notifying the Boise Butcher Co. that she owned

the O. K. Meat Market, and that by allowing her husband to manage and represent himself to said company as the proprietor thereof, she caused it to make the mistake of charging this bill to him, and to its loss of the amount of the bill if she is now permitted to take advantage of this mistake. Conceding, then, that this was only her neglect and that she did not wilfully intend to cheat or defraud the company, still, as was said in *Hill v. Lowe,* 6 Mackay (D. C.), 428, "This would, therefore, seem to be a plain case for the application of the well-known rule that if a loss is to fall on one of two innocent parties, the one whose neglect or lack of foresight made the loss possible is the one who must bear the burden." However, it is by no means certain that appellant can be. said to be an innocent party, or that she would actually suffer loss if compelled to pay the judgment in this case, for it is very questionable whether she has not actually in her possession enough money received from the sale of the very meat for which this charge was made during the week before said fire, and for the insurance money paid for the loss of the fixtures and goods in the shop, to pay this company the amount of its judgment against her. Her testimony shows that the amount of money received from insurance for loss of fixtures and stock on hand in the shop at the time of the fire was $1,000, and her testimony further shows that the fixtures at the very most only cost her $950; therefore a part of this insurance must have been for the loss of goods. Then it also appears that the fire occurred on Saturday night or Sunday morning, so that the amount of meat bought from respondent that week and sold by the O. K. Meat Market had not been paid for, and as appellant had the proceeds from sales of the market that week placed in the bank to her account, part of the $900 in controversy in this action must have been received by her from sales of said meat purchased of respondent and not paid for, and from said insurance money. But respondent company made the mistake of thinking that her husband owned the meat market and of bringing the original action in the justice's court to

collect its bill for this meat and other goods sold to her husband, and delivered at said market, against him instead of bringing it against her. If it had brought the action against her, there is no question but that a judgment against her for the debt would have been obtained. So far as appears from the record, neither the appellant nor her husband attempted to correct that mistake of said company, neither one of them went to it and offered to pay the bill, though they must both have known it was unpaid, but they allowed the company, which was still ignorant of the real facts in the matter, to commence an action in said justice's court against appellant's husband and recover judgment in said court against him for the full amount of its said bill; and that judgment is now the basis of this action against appellant. The original debt is merged into said judgment and cannot be inquired into here; it is now *res adjudicata.* If the mistake made by respondent in giving credit, and also in bringing the action against the wrong party was caused by the actions and by the silence of appellant, and no lack of ordinary business prudence and reasonable diligence can be attributed to respondent, then we think appellant should be estopped from denying that the appellant's ownership of the O. K. Meat Market was not real, and from now asserting that it was in fact her separate property and not community property, to the loss of said company.

In *Johnson v. Byler,* 38 Tex. 606, it is held that, "A party is estopped by his acts whenever he has gained an undue advantage and has caused his adversary a loss or injury." In the case at bar, if appellant is allowed to dispute the apparent facts which respondent relied on as real when it extended credit to her husband, she will certainly gain an advantage, and the respondent will suffer a loss. Bigelow on Estoppel, 6th ed., 607, gives the rule in regard to estoppel by conduct as follows: "It is now a well-established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full

power of disposition over the property, the same being in the latter's *actual* possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. . . . . This rule applies to married women doing business for themselves under the statutes.''

The fourth error assigned by appellant is in substance that the verdict is contrary to law because the jury had no right to find a judgment against the defendant under the facts proved by the evidence in the case. This point is, we think, sufficiently covered by what we have held in regard to the sufficiency of the evidence to sustain the verdict. The fifth and sixth assignments of error relate to instructions of the court given to the jury, and to instructions asked for by the defendant and refused by the court. The instructions given to the jury by the court perhaps to some extent went beyond the questions properly embraced in the issues made ·by the pleadings, but, taken as a whole, we do not think they show error sufficient to warrant us in concluding that they misled the jury as to the law of the case to the prejudice ·of the defendant. It is not proper to detach one instruction from the others and assail it on the ground that it, taken alone, does not fully or accurately state the law, when, if taken and construed with the other instructions given, there is no error sufficient to mislead the jury as to the law relating to the material issues of the case. We do not think these instructions taken together show any prejudicial error for which the verdict should be disturbed. As to the instructions asked for by defendant and refused by the court, having held that there is no reversible error in the instructions that were given, we find no reversible error in the refusal of the court to give said instructions asked for by defendant.

We have examined defendant's seventh and last assignment of error, which relates to the sufficiency of the complaint to state a cause of action, to the overruling of defendant's motion to have the jury instructed to bring in a verdict for the defendant, and as to alleged errors which occurred at the trial, and we conclude that the same is without merit.

From an examination of the entire record in this case, we do not find that it shows prejudicial error against the appellant, and the judgment of the court below is, therefore, affirmed. Costs are awarded to respondent.

Sullivan, C. J., concurs.