IN THE

# SUPREME COURT

OF THE

## STATE OF IDAHO.

(May 25, 1921.)

FRANK FELTHAM, Respondent, v. LOUIS A. BLUNCK,
and FLORENCE M. BLUNCK, Appellants,

[198 Pac. 763.]

DEED—MISTAKE—CORRECTION—TIME OF TAKING EFFECT—INTERVENING
CREDITORS—FRAUDULENT CONVEYANCE—INADEQUATE CONSIDERATION
—MARRIED WOMAN—ESTOPPEL.

1. A deed to correct a mistake in a former deed given for a
valuable consideration takes effect as of the date of the original
deed as against intervening judgment creditors of the grantor.

2. This is true even though the grantor is insolvent at the
time of the correction deed.

3. Where a husband conveys real property to his wife for a
valuable consideration, and a mistake is made in the description,
she is not estopped in favor of judgment creditors of her hus-
band, if she acts promptly to correct the mistake upon learning
of it.

APPEAL from the District Court of the Third Judicial
District, for Ada County. Hon. Carl A. Davis, Judge.

Action to quiet title. Decree for defendant subject to
lien. Defendant appeals. *Reversed.*

Richards & Haga, for Appellant.

A deed executed for the purpose of correcting the descrip-
tion in a former deed operates to convey title as of the
date of the original deed. (*Hutchinson v. Chicago & N. W.
Ry. Co.,* 41 Wis. 541; *Hodges v. Moore* (Tex. Civ.), 186
S. W. 415; *Pittsburgh, C. C. & St. L. Ry. Co. v. Beck,* 152

Ind. 421, 53 N. E. 439; 24 Cyc. 999; *Chapman v. Fields,* 70 Ala. 403; *Adams v. Stutzman,* 6 Ohio Dec. 612, 7 Am. L. Record, 76; *Wyche v. Greene,* 11 Ga. 159; 24 Am. & Eng. Ency. of Law, 275, sec. 2.)

Parties to a deed which does not correctly define the intention of the parties, can do voluntarily what a court of equity would compel them to do. (*Hodges v. Moore, supra; Hutchinson v. Chicago & N. W. Ry. Co., supra; Milby v. ·Regan,* 16 Tex. Civ. 352, 41 S. W. 372.)

The mere fact that property stands in the name of another is not sufficient to estop the owner from setting up his title as against the creditors of the apparent owner. (12 R. C. L. 602.) Where the owner had no knowledge that the title to land stood in the name of her husband, and she acted promptly when she discovered it, she is not estopped to assert her title against creditors of her husband. (12 R. C. L. 605; Ann. Cas. 1914C, pp. 1067–1071, note; *McKeehan v. Vollmer Clear Water Co.,* 30 Ida. 505, Ann. Cas. 1918E, 1197, 166 Pac. 256.)

The question of fraudulent intent is one of fact and not of law. (Sec. 5435, C. S.; *Clark v. Olsen,* 3 Cal. Unrep. 890, 33 Pac. 274; 6 Ency. of Ev. 105; 20 Cyc., p. 751.)

Under the laws of our state a debtor has the right to prefer any creditor, even though he is insolvent. (*Bates v. Papesh,* 30 Ida. 529, 166 Pac. 270; *Pettengill v. Blackman,* 30 Ida. 241, 164 Pac. 358; *Wilson v. Baker Clothing Co.,* 25 Ida. 378, 137 Pac. 896, 50 L. R. A., N. S., 239; *Capital Lumber Co. v. Saunders,* 26 Ida. 408, 143 Pac. 1178.)

Elliott & Healy, for Respondent.

Conveyance of insolvent grantor in order to be valid as against existing creditors, must be for a valuable and adequate consideration. (*Pettengill v. Blackman,* 30 Ida. 241, 164 Pac. 358; *Bates v. Papesh,* 30 Ida. 529, 166 Pac. 270; *Wright v. Craig,* 40 Or. 191, 66 Pac. 807; *Brown v. Case,* 41 Or. 221, 69 Pac. 43; 20 Cyc. 509; *Printz v. Brown,* 31 Ida. 443, 174 Pac. 1012.)

Where transfer is from husband to wife fraud is to be presumed and it rests with the husband or wife to rebut this presumption by showing a valuable and adequate consideration. (*Brown v. Case, supra;* 56 L. R. A. 817–846, note; 12 R. C. L., pp. 515–517.)

No actual fraudulent intent is necessary to be shown where conveyance is made by insolvent debtor for an inadequate consideration. (*Capital Lumber Co. v. Saunders,* 26 Ida. 408, 143 Pac. 1178; *Pettengill v. Blackman, supra; Bates v. Papesh, supra.*)

A gift cannot be consummated after insolvency so as to be effective against existing creditors unless there was a visible change of ownership when the gift was made and all that remained to be done was to execute a deed. (20 Cyc. 461.)

A wife who negligently or carelessly permits her separate property to remain on the records in the name of her husband and he obtains credit on the strength of his ownership, will be estopped to assert her title as against a creditor who has been deceived by the husband. (*Chaney v. Gauld Co.,* 28 Ida. 76, 152 Pac. 468; *McKeehan v. Vollmer Clear Water Co.,* 30 Ida. 505, Ann. Cas. 1918E, 1197, 166 Pac. 256; *Goldberg v. Parker,* 87 Conn. 99, Ann. Cas. 1914C, 1059, 87 Atl. 555, 46 L. R. A., N. S., 1097; 12 R. C. L. 605.)

McCARTHY, J.—Respondent brought this action to quiet his title to forty acres described as the S. ½ of the SW. ¼ of the NW. ¼ and the S. ½ of the SE. ¼ of the NW. ¼ of section 17, T. 3 S., R. 1 W., B. M., relying on a sheriff's deed issued by virtue of a sale under execution, after judgment recovered, May 16, 1914, against appellant's former husband, Louis A. Blunck, in the sum of $468.60, for work which respondent had done for Blunck upon the NW. ¼ of the NE. ¼ of said section 17. He alleges in his complaint that the deed to the land in suit, made March 3, 1913, by Blunck to appellant, then his wife, was made to hinder, delay and defraud creditors, and prays that it be set aside.

Defendant Louis A. Blunck filed a disclaimer of any interest in said land, and did not join in the appeal to this court.

Appellant, Florence M. Blunck, answering alleges title in herself to the forty in question under a deed of March 3, 1913, which deed she claims to be merely a correction deed of a deed made to her March 25, 1912, in which the intent was to convey it to her, but which, through a mistake in the description, described other land, not owned by the grantor. There is no evidence that the mistake was other than an honest one, or that there was any collusion between Blunck and appellant. The consideration for the deed of March 25, 1912, was her act of deeding, on the same date, the NW. ¼ of the NE. ¼ of said section 17, to Jas. L. Northrop and Charles W. Northrop, in the dissolution settlement of a partnership between Blunck and the Northrops. She had acquired this last-mentioned forty acres as a prenuptial gift from Blunck, by deed of November 1, 1910.

At the beginning of 1911 Blunck and Charles Northrop formed a partnership for the development of 200 acres of sagebrush land—the NW. ¼ of the NW. ¼ of the NE. ¼ of said section 17—into orchard. This land included the gift forty and the forty in suit. By the terms of an agreement dissolving said partnership on March 26, 1912, the Northrops were to get 100 acres including the gift forty, and Blunck 100 acres including the forty in suit. Appellant conveyed the gift forty to the Northrops. To induce her to do this, Blunck agreed to convey to her the forty in suit, and with this intention executed the conveyance of March 25, 1912, in which the mistake in description occurred. The gift forty was at that time in sagebrush, except for a few acres that had been cleared. Under the terms of the dissolution agreement Blunck was to clear, level and put this forty into orchard. On April 12, 1912, respondent entered into a written agreement with Blunck to do this work, performed it, was not paid, brought suit, recovered judgment, levied on the forty in suit and so obtained the sheriff's deed under which he claims.

The trial court found that at the time appellant conveyed her gift forty to the Northrops, and Blunck made the conveyance of March 25, 1912, the value of the gift forty was about $2,000, and the value of the forty in suit was about $8,000; also that the conveyance of the land in suit, March 3, 1913, left Blunck insolvent.

Appellant testified that she had the mistake in the deed corrected within a week after she discovered it, that she did not know respondent performed the work for Blunck upon which the judgment claim was based, nor that Blunck had agreed to put the gift forty in orchard as part consideration of the dissolution agreement. In 1911 Blunck and Northrop took care of the original gift forty the same as all the rest of the land, treating it as one body. The land in suit was put in orchard in 1911 by Blunck and Northrop operating as the Blunck Northrop Orchard Company. Appellant admitted she knew that respondent was working on the land at that time. The claim for that particular labor was placed in judgment by respondent and paid by Northrop. Appellant was on the land only once in 1912. She did not superintend the orchard or any part of it in 1912, but Blunck looked after all of it. She had no knowledge of what Blunck told others about the forty acres in suit. Blunck did not talk business with her. Respondent testified that in 1911 he plowed, leveled and put in orchard 160 acres of the partnership tract for the Blunck Northrop Orchard Company. In 1912 Blunck told respondent that he owned the land in suit and asked him for an estimate on certain buildings to be erected on it, saying that he was going to make it his home. Respondent did not know about the arrangements between Blunck and appellant and believed he could hold the land which Blunck claimed to own. He would not have done the work on the gift forty otherwise, because he regarded Blunck as poor pay for the reason that he could not get his money from him for the work done for the company. Respondent knew what land Blunck got on the dissolution agreement with Northrop. He did not tes-

tify that he examined the record or knew or relied upon
what the record showed as to the title of the land in suit.

The trial court found that appellant was negligent in fail-
ing to discover the mistake in the deed of March, 1912, and
in permitting the record title to remain in the name of
Blunck until March, 1913; also that the deed of March 3,
1913, from Blunck to appellant, was for a grossly inadequate
consideration and that he was insolvent at the time; and
concluded that the deed was in fraud of respondent so far
as the value of the forty in suit exceeded the value of the
gift forty. The decree was that title be quieted in appellant
subject to a lien in favor of respondent in the amount of
his judgment.

In her answer, after denying the material allegations of
the complaint, under the designation of affirmative defense,
appellant set up her deed and prayed for judgment quieting
title in her and removing the cloud caused by respondent's
judgment and deed. Treating this so-called affirmative de-
fense as a cross-complaint, respondent answered it. Before
this answer was filed respondent's counsel had filed a note
of issue asking that the case be set for trial and, by stipula-
tion the parties took the deposition of George H. Van de
Steeg, Esq., a material witness for appellant. Counsel for
appellant moved to strike the answer to the so-called cross-
complaint because, first, it was not a cross-complaint, and
secondly, new issues were raised by said answer as to which
Mr. Van de Steeg's testimony would be material, and it was
impossible to secure another deposition or his oral testimony
for the reason that he was then in active military service.
The trial court denied the motion to strike and this is as-
signed as error. We do not think this point is well taken
because, first, the part of appellant's pleading which she
designated as affirmative defense was in reality a cross-
complaint and subject to answer, and secondly, a reading of
Mr. Van de Steeg's deposition convinces us that it covers
his entire knowledge of the transaction and nothing would
have been gained by taking a further deposition.

Appellant's other assignments of error may be divided into the following heads: First, that the court erred in finding that the conveyance of March, 1913, was fraudulent as to respondent, and second, that the court erred in finding that appellant was negligent and in concluding that she should therefore be estopped.

The first question is: Was the conveyance of March, 1913, in fraud of respondent's rights under C. S., sec. 5433, which reads as follows: "Every transfer of property, or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

It is contended that it was, because, first, Blunck was insolvent when he made it, and second, the value of the property conveyed was grossly in excess of the value of the consideration flowing from the appellant. Under C. S., sec. 5435, the question of fraudulent intent is one of fact, and a transfer cannot be adjudged fraudulent solely on the ground that it was not made for a valuable consideration. (*Rogers v. Boise Assn. of Credit Men,* 33 Ida. 513, 196 Pac. 213; *Moody v. Beggs,* 33 Ida. 535, 196 Pac. 306.) But when a debtor being insolvent conveys all his property without consideration the inevitable result is to hinder and delay his creditors. As in all other cases, he is held to intend the natural consequences of his acts; thus the logical inference is that he intended to delay and hinder his creditors and, in the absence of circumstances which rebut that inference, the conveyance will be held in fraud of them. (*Moody v. Beggs, supra.*) So, if the debtor, being insolvent conveys all his property to one creditor, its value being grossly in excess of the amount of the indebtedness, the conveyance will be treated as voluntary as to the excess, and the logical inference being that he intended to delay and hinder his other creditors, to the extent of such excess, it

will be so held. Accordingly the property will be impressed with a lien in favor of the other creditors to that extent. (*Wright v. Craig*, 40 Or. 191, 66 Pac. 807; *Clements v. Nicholson*, 6 Wall. (U. S.) 299, 18 L. ed. 786, see, also, Rose's U. S. Notes; *Herschfeldt v. George*, 6 Mich. 456; *Boyd etc. v. Dunlap*, 1 Johns. Ch. (N. Y.) 478; *Lyon v. Haddock*, 59 Iowa, 682, 13 N. W. 737; *Bates v. McConnell*, 31 Fed. 588.) The trial court's finding that Blunck was insolvent at the time of the conveyance in March, 1913, is borne out by the evidence. At that time, while respondent had not obtained his judgment, the contract out of which the claim arose was in existence, the claim had thus been initiated, and this would be sufficient to give respondent the proper standing to attack the conveyance as in fraud of his rights. (*Potts v. Mehrmann* (Cal. App.), 195 Pac. 941.) If the property had belonged to Blunck at the time of the conveyance in March, 1913, it would have been invalid as in fraud of respondent's rights.

However, Blunck had agreed for a valuable consideration to convey this very property to appellant in March, 1912, and had given her a deed with that intent. A mistake was made in the description of the property. From the time of the transaction of March, 1912, appellant was the equitable owner of the property and Blunck held the naked legal title in trust for her. Appellant had the right to have the mistake corrected by a court of equity, and what a court of equity would do the parties had a right to do themselves and with the same effect. (*Hutchinson v. C. & N. W. Ry. Co.*, 41 Wis. 541, at 551.) The respondent had no right to object to the conveyance of the property in March, 1912, on the ground of inadequacy of consideration or any other ground because, first, it is not shown that Blunck was insolvent at that time, and second, the respondent's claim had not been initiated at that time. Such conveyance was not in violation of his rights. If the mistake in the original deed had been corrected by a decree of a court of equity, the correction would have taken effect as of the date of the

original deed, and have defeated any claims of judgment
creditors of Blunck against the property which arose after
its delivery. (*Rhodes v. Outcalt*, 48 Mo. 367; *Wall v. Ar-
rington*, 13 Ga. 88; *Wyche v. Greene*, 11 Ga. 159; *Burke v.
Anderson*, 40 Ga. 535; *Stone v. Hale*, 17 Ala. 557, 52 Am.
Dec. 185; *Chapman v. Fields*, 70 Ala. 403; *White v. Wilson*,
6 Blackf. (Ind.) 448, 39 Am. Dec. 437; *Burgh v. Francis*,
19 Rev. Rep. Eng. 275; *Hutchinson v. Chicago & N. W. Ry.
Co., supra; Finch v. Earl of Winchelsea*, 1 P. Wms. 277,
24 Eng. Reprint, 387; 1 Story, Eq. Jur., 13th ed. 165.)
The reason for this holding is that the judgment creditor
stands in the shoes of the debtor and his rights cannot at-
tach to anything which the debtor did not own. A trust
arises in favor of the grantee similar to the trust which
arises where one party pays the consideration and the other
party wrongfully takes title in his own name. There is no
reason in principle why the same rule should not be applied
where the grantor corrects the mistake in the description
by a voluntary deed without the intervention of equity, if
the evidence clearly shows, as here, that there was an honest
mistake and that the purpose of the subsequent deed is to
correct it. (*Hutchinson v. Chicago & N. W. Ry. Co., supra.*)
It has been held that where the first deed is void because
not executed in accordance with law a later deed will not
pass title as of the date of the original one. (*Barr v.
Schroeder*, 32 Cal. 609; *Walters v. Mitchell*, 6 Cal. App. 410,
92 Pac. 315; *Scaplen v. Blanchard*, 187 Mass. 73, 72 N. E.
346). These cases are distinguishable from one like the
present where the original deed was executed in accordance
with all the requirements of law and the mistake was merely
one in the description. In *Johnston v. Jones*, 1 Black
(U. S.), 209, 17 L. ed. 117, at 121, see, also, Rose's U. S.
Notes, it is said: "If there were any mistake in the origi-
nal deeds of which Johnston had a right to avail himself
the remedy should have been sought by a proceeding in
chancery had for that purpose, with all the proper parties
before the court. The agreement of the parties themselves

that there was such error; and a deed made in pursuance of that agreement, cannot affect the rights of third persons.''

In that particular case the third person happened to be a purchaser. If the court meant that in all cases a distinction should be drawn between the effect of a decree correcting the error and a voluntary conveyance correcting it we think that, for reasons given above, such distinction is not well taken. We conclude that the deed of correction of March, 1913, took effect as of the date of the original deed in March, 1912. The conveyance cannot be set aside nor impeached as a conveyance in fraud of respondent's rights unless the appellant is estopped by her conduct to assert her title against him. This brings us to the second main question.

The second contention is that appellant is estopped to assert her title to the land free of a lien in respondent's favor because, first, she was negligent in not discovering the mistake in the description, and secondly, because after the deed of March, 1912, she permitted Blunck to manage and control the property as his own. The decree of the trial court upholds this contention. Appellant asserts that an estoppel could not arise against her because she could not have made a valid contract to subject her separate property to the payment of her husband's debt, and the law will not permit an estoppel to bring about that result. In support of this contention her counsel cite *School Dist. No. 8 v. Twin Falls etc. Ins. Co.*, 30 Ida. 400, 164 Pac. 1174, holding that an estoppel can never be invoked in aid of a contract which is expressly prohibited by statutory provision. This case simply holds that an estoppel cannot be invoked to prevent the denial of power of a municipal corporation to enter into such a contract. The rule would apply only to a case where a party sought to enforce the contract of a married woman entered into by him knowing that she was a married woman and thus under a disability. That a married woman may be estopped to set up her rights in her separate property where she has knowingly permitted the record and apparent ownership of the same to exist in

her husband has been held by this court. (*Grice v. Woodwort*, 10 Ida. 459, 109 Am. St. 214, 80 Pac. 912, 69 L. R. A. 584; *Boise Butcher Co. v. Anixdale*, 26 Ida. 483, 144 Pac. 337; *Chaney v. Gauld Co.*, 28 Ida. 76, 152 Pac. 468.) It is held by the great weight of authority that where a married woman's separate property stands of record in the name of her husband she is estopped in favor of the creditor of the latter who extends credit to him on the strength of the record title only in case she knew that the title stood in his name. (*Huot v. Reeder Bros. Shoe Co.*, 140 Mich. 162, 103 N. W. 569; *Trenton Banking Co. v. Duncan*, 86 N. Y. 221; *Woolsey v. Henn*, 85 App. Div. 331, 83 N. Y. Supp. 394; *Bell v. Stewart*, 98 Ga. 669, 27 S. E. 153; *Southern Bank v. Nichols*, 235 Mo. 401, 138 S. W. 881; *Blake v. Meadows*, 225 Mo. 1, 123 S. W. 868, 30 L. R. A., N. S., 1; *Steagall v. Steagall*, 90 Va. 73, 17 S. E. 756; *Mayer v. Kane*, 69 N. J. Eq. 733, 61 Atl. 374.) Such is the holding of this court in *McKeehan v. Vollmer-Clearwater Co.*, 30 Ida. 505, Ann. Cas. 1918E, 1197, 166 Pac. 256. In cases where it is held that she is estopped it appears that she did know that the title stood in her husband's name. (*Goldberg v. Parker*, 87 Conn. 99, Ann. Cas. 1914C, 1059, 87 Atl. 555, 46 L. R. A., N. S., 1097; *Mertens v. Schlemme*, 68 N. J. Eq. 544, 59 Atl. 808; *Boise Butcher Co. v. Anixdale, supra; Chaney v. Gauld, supra.*) The same principle applies to a case like the present where the title stands in the husband's name after an intended conveyance to the wife for a valuable consideration, because of a mistake in the description. It appearing in this case that the wife did not knowingly permit the title to her land to remain in her husband's name and acted promptly to correct the mistake as soon as she discovered it, there is no ground for raising an estoppel against her in that regard. It is further contended, however, that she is estopped because she permitted him to manage her land. This fact would not estop her, unless the claim was based upon a transaction from which she or her property received some benefit, as in *Boise Butcher Co. v. Anixdale, supra.* The mere fact that the work done on the gift forty by re-

spondent was in fulfillment of Blunck's contract with the Northrops by which Blunck got the land in suit, is not sufficient to make the doctrine of that case applicable. Certainly appellant could not be estopped by oral statements Blunck made to Feltham, claiming to own the land which she did not authorize and of which she had no knowledge.

"To authorize the finding of an estoppel *in pais*, against the legal owner of land, there must be shown, we think, either actual fraud, or fault or negligence, equivalent to fraud on his part, in concealing his title; or that he was silent when the circumstances would impel an honest man to speak; or such actual intervention on his part, as in *Storrs v. Barker*, as to render it just, that as between him and the party acting upon his suggestion, he should bear the loss." (*Trenton Banking Co. v. Duncan, supra*, 86 N. Y., at p. 230.)

The sorts of conduct on the wife's part which will work an estoppel are stated in *Blake v. Meadows, supra*, as follows: "If she permit or encourage her husband to hold himself forth as the owner of property, if she voluntarily put the title to her property in him, thus knowingly clothing him with *indicia* of ownership, or by conscious acts acquiesce in his apparent ownership, knowing, or having good cause to know, that he is using the property to obtain credit, or if she conspire with him to that end, or if (when applied to for information) she lie, deceive, or mislead, it is not unreasonable to estop her to claim the property when such claim makes her husband insolvent."

Applying the principles above set forth to the facts shown by the evidence in this case, we find no conduct on the part of appellant which estopped her to assert her ownership of the land as against respondent. The decree should have quieted title in appellant free and clear of any claim or lien in his favor. The decree is reversed and the case remanded with instructions to enter findings and decree in accordance with this opinion. Costs awarded to appellant.

Rice, C. J., and Budge, Dunn and Lee, JJ., concur.