(January 16, 1904.)

## COATS v. HARRIS.

[75 Pac. 243.]

RIGHT OF HEIR—DECREE OF DISTRIBUTION—POWER OF HEIR TO DIS-
POSE OF PROPERTY IN EXPECTANCY—WITNESS—QUALIFICATION OF.

1. A will giving to the wife a life estate and the son all prop-
erty after her death, empowers the son to transfer by written in-
strument to his mother and her heirs and assigns forever property
to become his after the death of the mother.

2. A decree of distribution by the probate court will not defeat
an action of one who was not an heir and was not a party to any
of the proceedings in that court when it was settling the estate
of a deceased person; he not being a party to the proceedings could
not appeal from the order of that court.

3. Section 5957 of the Revised Statutes of Idaho precludes evi-
dence of conversations with the deceased relating to the disposition
of her property.

(Syllabus by the court.)

APPEAL from the District Court of Owyhee County. Hon-
orable George H. Stewart, Judge.

Judgment for respondent from which, together with an
order overruling a motion for new trial, appellant appeals.

Judgment for plaintiff—respondent here. Judgment af-
firmed with costs to respondent.

The facts are stated in the opinion.

E. Nugent and J. F. Nugent, for Appellant.

It is conceded that when Levi Harris, who was the owner
and possessor of all the property involved in this connection,
died, his immediate family consisted of his wife and Alvin M.
Harris, his son. His relatives were his stepchildren, who had
not lived with him for years. They were David Coats, John
C. Coats and Mary Loveridge, respectively, about forty years,
forty-seven years and forty-four years. Levi Harris, a short
time before his death, executed in writing, his last will and
testament, in which he devised and bequeathed the whole of his
estate to his wife, Nancy Harris, to hold and enjoy so long as

she might live. In the same instrument he used the following language in reference to his son, the said Alvin M. Harris: "Fourthly: I devise the remainder of my property after the death of my said wife, Nancy Harris, to my said son, Alvin Milton Harris, and to his heirs and assigns forever; provided that my said son shall leave my said wife in the quiet and peaceable possession of said property during her lifetime, undisturbed. But should my said son give my said wife any trouble in her possession of said property, or cause her any litigation in relation thereto, then, and in that event, the whole of my said property to go to my said wife, Nancy Harris, and to her heirs and assigns forever. Fifthly: I, having given unto my said son, Alvin Milton Harris, in my lifetime, property to the value of about six thousand dollars; it is my desire that he receive no part of or interest in my estate, except the part and in the manner and under the conditions herein above described." It is to the above-recited words that the respondent is supposed to trace the right of A. M. Harris, the administrator, to make the nominal exchange with his mother, by which the respondent obtained a title to the property in question. It was simply an exchange made without right, and for which no money or valuable consideration ever passed. In addition, it was accompanied by an understanding with his mother by which she agreed to hold said title in trust for him, and which she subsequently carried into execution by the decree, made at her request, by which she afterward vested any rights she obtained thereby to A. M. Harris. This attempt to trace a title to the property must manifestly fail if we succeed in making it clear that under the will of Levi Harris, A. M. Harris and his mother had no authority to enter into the exchange in question. In other words, if we establish beyond question that the said A. M. Harris was inhibited by the will and the law from entering into the agreement in question, then there is no legal principle which they can ever attempt to apply. At as comparatively an early date as the year 1832, the supreme court of the United States laid down certain rules for the construction of wills, which have been adhered to since by every court in the land. In that somewhat celebrated case, Chief

Justice Marshall uses the following language: "The first great rule in the exposition of wills, to which all rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law." (*Smith v. Bell,* 6 Pet. 68, 8 L. ed. 322; Page on Wills, sec. 461, and large number of cases cited; Schouler on Wills, secs. 466-468 et seq.) On the twenty-seventh day of October, 1896, the executrices of the estate of said Levi Harris made their final account of the affairs of said estate, and prayed for a distribution of said estate in accordance with the terms of the will of the said Levi Harris. In due course said petition was heard by the probate court, which duly rendered the decree prayed for. That decree has never been appealed from or in any manner legally drawn in question until this proceeding, and then only indirectly. Upon this state of facts we contend that the rights herein sought to be litigated were fully, fairly and finally litigated, at the time when said decree was rendered, and is no longer subject to litigation. (*In re Trescony's Estate,* 119 Cal. 568, 51 Pac. 951; *Jewell v. Pierce,* 120 Cal. 79, 52 Pac. 132; *Crew v. Pratt,* 119 Cal. 139, 51 Pac. 41-43; *Goldtree v. Allison,* 119 Cal 344, 51 Pac. 561; *Hill v. Lawler,* 116 Cal. 359, 48 Pac. 323; *Daly v. Pennie,* 86 Cal. 552, 21 Am. St. Rep. 61, 25 Pac. 67.) There is only one error in the ruling of the court we care to notice. It occurred when it decided that we were not at liberty to introduce the testimony of Alvin M. Harris to prove the trust agreement between himself and his mother, by which she engaged herself to hold the property he conveyed to her, and to see that it was distributed to him in accordance with the terms of his father's will, which she afterward did. We were not trying to prove a trust in real estate, but in personal property, and which by her petition to the probate court she afterward executed. We were not trying to establish a moneyed claim against the estate,

but merely to establish a "status." For both of said reasons the sections of the statute cited by respondent had no. application. (Idaho Rev. Stats., sec. 5957; *Myers v. Reinstein,* 67 Cal. 80-92, 7 Pac. 192; *Booth v. Pendola,* 88 Cal. 44, 23 Pac. 200, 25 Pac. 1101; *Fallon v. Butler,* 21 Cal. 24, 81 Am. Dec. 140; 4 Notes on Cal. Rep., notes on *Myers v. Reinstein,* 67 Cal. 89, 7 Pac. 192.)

. E. M. Wolfe and R. Cunningham, for Respondent.  ·

The title to property is always in someone, and in this case upon the death of Levi Harris it immediately vested in Alvin M. Harris, and if he had died instead of having transferred it to his mother, his children would have inherited it. (*State v. Stevens,* 6 Idaho, 367, 55 Pac. 886, 887; Page on Wills, secs. 658, 659, 695; *Gingrich v. Gingrich,* 146 Ind. 227, 45 N. E. 227; *In re Garcelon's Estate,* 104 Cal. 570, 43 Am. St. Rep. 134, 38 Pac. 417, 32 L. R. A. 595.) Did the decree of the probate court in the Levi Harris case reinvest Alvin Harris with the title he so conveyed? It will be remembered that in the probate court a decree of distribution was entered in the Levi Harris estate, by which the property was decreed to Mrs. Nancy Harris for life and upon her death to her son, Alvin M. Harris. Did that decree reinvest him with title? We say no. The decree simply executed the will. It settled the rights of the legatees as legatees only. It did not affect contracted rights, controversies between heirs and outsiders. Where the question has been before the courts, nearly, if not all of them, have held that decrees of probate courts in distribution of estates are not conclusive outside of these strictly "in probate matters." In California—and our worthy opponents rely solely on California—the supreme court in very late decisions hold that the decree is conclusive against them "only so far as they claim in their capacities as heirs, legatees or devisees." Counsel cite several California cases, and strong language can be copied from them. But opinions are valuable only by comparison and relevancy of facts involved. The cases cited are probate court cases and pass upon the effect of decrees of final distribution, but these facts do not give them value as precedents in their cases, as compared with a case exactly in point. (*Chever v. Ching Hong*

*Poy,* 82 Cal. 68, 22 Pac. 1081.) "An heir may contract about or convey the title which the law had cast upon him on the death of his ancestor, and the validity or force of such contract is not affected by the fact that a probate court afterward, by its decree of distribution, declares his asserted heirship to be valid." The above case is approved in the latest case in *Re Burdick's Estate,* 112 Cal. 387, 44 Pac. 734. (*Martinovich v. Marsicano,* 137 Cal. 354, 70 Pac. 459; *Hall v. Pierson,* 63 Conn. 332, 28 Atl. 544; *Dobberstein v. Murphy,* 44 Minn. 526, 47 N. W. 171; *Farnham v. Thompson,* 34 Minn. 330, 57 Am. Rep. 59, 26 N. W. 9.) Counsel claim that the court erred in refusing to permit Alvin Harris to testify to alleged conversation with his mother to establish a trust in this property. On this question we cite *Rice v. Rigley,* 7 Idaho, 115, 61 Pac. 290.

STOCKSLAGER, J.—On or about the second day of April, 1895, Levi Harris died in Owyhee county, Idaho, and at the time of his death was a resident of said county. On the twenty-fourth day of June, 1895, his will was admitted to probate. After providing for the payment of the expenses of his last sickness and funeral expenses the will follows:

"Thirdly: I give and devise all of my real estate of every name and nature whatever, together with the tenements, hereditaments and appurtenances and all of my personal estate, goods, chattels and credits and all other property of whatever name and nature owned by me at the time of my death, also including one hundred and forty head of cattle to be delivered to me by my son, Alvin Milton Harris in September, 1895, unto my wife, Nancy Harris, to have and to hold the said premises and property so long as she shall live.

"Fourthly: I devise the remainder of my property after the death of my said wife, Nancy Harris, to my said son, Alvin Milton Harris, and to his heirs and assigns forever; provided that my said son shall leave my said wife in quiet and peaceable possession of said property during her lifetime, undisturbed. But should my said son give my said wife any trouble in her possession of said property, or cause her any litigation in relation thereto, then and in that event the whole of said property to go to my said wife, Nancy Harris, and to her heirs and assigns forever.

"Fifthly: I having given unto my son, Alvin Milton Harris, in my lifetime property to the value of about six thousand dollars, it is my desire that he receive no part of or interest in my estate, except the part and in the manner and under the conditions herein above described.

"Lastly: I hereby nominate and appoint my said wife, Nancy Harris, and her daughter, Mrs. Mary Loveridge, both of Bruneau Valley, County of Owyhee, State of Idaho, the executrices of my last will and testament, without bonds."

After the will was probated and during the administration of the estate, the mother and son within six months after the death of the husband and father entered into contracts by which each was to share in the estate left by Levi Harris. These contracts were executed on the twenty-fourth day of October, 1895. The first one, for a consideration of one dollar, granted, bargained, sold, conveyed, remised, released and forever quitclaimed all the right, title and interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy, of the interest of Nancy Harris to Alvin Milton Harris to the following described land: "The N. ½ of the N. W. ¼ and N. E. ¼, section 8, and the S. W. ¼ of the S. W. ¼, and the E. ½ of the S. W. ¼, and the W. ½ of the S. E. ¼ of section 5, in township 7 south, of range six east, comprising four hundred and forty acres."

The other contract, for a consideration of one dollar, granted, bargained, sold, assigned and delivered to Alvin Milton Harris, his heirs and assigns forever, all the right, title, interest, claim and demand, both at law and in equity as well in possession as in expectancy, and all right, title, interest, estate, claim and demand which she may hereafter obtain or come into the possession of, or right to the possession by inheritance from the estate of Levi Harris, by succession, will, or otherwise of the said Nancy Harris in and to the following described property:

"All the personal property belonging to the estate of Levi Harris, deceased, of every name, kind or nature, excepting and reserving unto the said Nancy Harris all moneys, notes, credit and accounts of every name, kind and nature. belonging to or owing to said estate, and excepting also to said Nancy Harris. the one hundred and forty head of cattle which were to be de-

livered by Alvin M. Harris to deceased, and their proceeds, reserving also all the proceeds of the crops raised upon the real estate of said estate during the year 1895; also two certain horses, to have and to hold unto the said party of the second part, and unto his assigns forever."

The conveyance from Alvin M. Harris to Nancy Harris, for a consideration of one dollar and other valuable consideration to him in hand paid, granted, bargained, sold, assigned and delivered unto Nancy Harris and to her heirs and assigns forever all the right, title, interest, claim and demand both in law and in equity as well in possession as in expectancy, and all right, title, interest, estate, claim and demand which he may hereafter obtain or come into possession of or right to the possession of by inheritance from the estate of Levi Harris by succession, will or otherwise, and all rights to remainder or reversion under the will of the said Levi Harris of the party of the first part in and to the following personal property, to wit: All moneys, notes, credits and accounts of every name, kind and nature belonging to or owing to the estate of Levi Harris, deceased; also the one hundred and forty head of cattle which were to be delivered by said party of the first part to said deceased; also all the proceeds of the crops raised upon the real estate of said estate during the year 1895; also two horses.

These three instruments were acknowledged before W. C. Howie, a notary public residing at Mountainhome, in Elmore county.

Immediately thereafter the parties took possession of the property of the estate of Levi Harris as shown by the contracts, and remained in such possession until the demise of Nancy Harris. There can be no question of the interest of the parties to these contracts, and during the life of Nancy Harris the mother and son lived in peace and harmony, each enjoying the proceeds of the estate of Levi Harris, not as he declared in his will, but as they mutually agreed in their contracts.

It is shown by the record that Alvin M. Harris believed that the contracts he had with his mother were binding upon him after her death which occurred on or about the nineteenth day of August, 1897. On the eleventh day of December, 1897, he petitioned for letters of administration; and in his petition

named as the heirs of Nancy Harris, J. C. Coats, Jane Coats, David Coats who has since died, and himself, all residents of Bruneau Valley, Owyhee county.

Upon the hearing of this case in the district court the learned judge found that petitioner, John C. Coats, is a son of Nancy Harris, deceased; that Alvin M. Harris is a son of Nancy Harris, and Mary Loveridge is a daughter of said deceased, and the above-named parties are the only heirs of said Nancy Harris; that the said John C. Coats, Alvin M. Harris and Mary Loveridge are each entitled to a one-third of the estate of Nancy Harris, deceased; that Alvin M. Harris is the duly appointed, qualified and acting administrator of said estate. That there are no debts against said estate; that the assets of said estate in the hands of the said administrator is the sum of $10,-918.99, exclusive of real estate. That said administrator shall pay and account for interest on said sum from the twenty-seventh day of November, 1899, at the rate of seven per cent per annum until said estate is finally distributed; that said interest amounts to the sum of $2,328.21, making a total of $13,-247.20 to be accounted for by said administrator, exclusive of real estate.

A decree was entered in conformity with said findings.

Counsel for appellant insist that the evidence was insufficient to justify the findings and decision, and that the said findings and decision are against law. That all the said evidence proved that said petitioner as one of the alleged heirs at law of the said Nancy Harris, deceased, or in any capacity or for any reason or cause was not entitled to any part or portion of said estate. This contention is ably and earnestly supported by the brief of counsel for appellant.

As we view the record before us for consideration, the important question for our determination is: Could the appellant, as the sole heir of Levi Harris after the death of Nancy Harris (on certain conditions named in the will of Levi Harris), in any manner transfer, encumber or convey the property which was to become his after his mother's death? It is urged that appellant was "inhibited by the will· and the law from entering into the agreement, and that it was simply an exchange made without right and for which no money or valuable consideration

ever passed." It would seem from the record that the transfers were made in good faith and for a valuable consideration, as it is shown that the appellant immediately entered into the possession of the real estate and continued in such possession enjoying the benefit and proceeds thereof until the time of the demise of his mother; and after her death when he was appointed administrator of her estate he named as her heirs himself and the Coats children, thereby showing his good faith in the entire transaction.

In *Smith v. Bell*, 6 Pet. 68, 8 L. ed. 323, an exhaustive and instructive opinion by Chief Justice Marshall, it is held that bequests to the testator's wife of all his personal estate to and for her own use, benefit and disposal absolutely, the remainder of the said estate after her decease to be for the use of the said Jesse Goodwin, the son of the testator. Held, the bequest to the son cut down the interest of the wife to a life estate, and the son took a vested remainder. No one will question the conclusion of this eminent jurist in the absence of some statutory provision, or some change in the law since the opinion was written. All we find in this opinion is that the will must be construed according to its solemn provisions and this we conceive to be the law in all cases. Schouler on Wills, in sections 467, 468, 469, on the subject of construction of wills, says: "The struggle in all such cases is to accomplish the real objects of the testator so far as they may be accomplished consistently with the principles of law, but in no case to exceed his intention fairly deducible from the very words of the will." This language is an expression of Judge Story. Our attention is also called to Page on Wills, section 461, and cases cited. It is not difficult to interpret the will of Levi Harris. It is plain and unambiguous; the language is susceptible of but one construction, and that is that he intended that his wife should control the property of his estate during her life and thereafter it was to descend to his son, the appellant, on condition that he would not contest the will or make his mother trouble in her possession of the property.

Soon after the death of Levi Harris we find the son in possession of all the real estate with a deed from his mother, and she with a bill of sale from the son, by which he sells to her

all his interest *forever,* and to her heirs, all the moneys, notes, etc., due or owing the estate; in other words, they attempt to divide the property in such a way that each may have the bene- fit during the life of the mother. The son may have anticipated that his mother would live a number of years, and this may have prompted him to relinquish all his interest in the personal property enumerated in the bill of sale in order to obtain im- mediate possession of the real estate. Be this as it may, the exchange was consummated and so remained until the death of the mother.

Section 2830 of our statute provides that "A future interest is vested when there is a person in being who would have a right defeasible or indefeasible to the immediate possession of the property upon the ceasing of the immediate or precedent in- terest." Can there be any question but that the property of Levi Harris under the terms of the will would and did pass to ap- pellant upon the death of his mother? We think not. Counsel for respondent very aptly says: "The title to property is always in someone, and in this case upon the death of Levi Harris it immediately vested in Alvin M. Harris, and if he had died without the transfer to his mother, his children would have in- herited it. (*State v. Stevenson et al.,* 6 Idaho, 367, 55 Pac. 886; Page on Wills, secs. 657-659, and 695.)

It is next urged by counsel for appellant that "On the twenty- seventh day of October, 1896, the executrices of the estate of said Levi Harris made their final account of the affairs of said estate, and prayed for a distribution of said estate in accordance with the terms of the will of said Levi Harris. In due course said petition was heard by the probate court, which duly ren- dered a decree as prayed for. That decree has never been ap- pealed from or in any manner legally drawn in question until this proceeding and then only indirectly."

Upon this state of facts we contend that the rights herein sought to be litigated were fully, fairly and finally litigated at the time when said decree was rendered and is no longer sub- ject to litigation.

In support of this contention they cite *In re Trescony's Es- tate,* 119 Cal. 568, 51 Pac. 951; *Jewel v. Pierce,* 120 Cal. 79, 52 Pac. 132; *Crew v. Pratt,* 119 Cal. 139, 51 Pac. 41, 243; *Goldtree*

*v. Allison,* 119 Cal. 344, 51 Pac. 561; *Hill v. Lawler,* 116 Cal. 359, 48 Pac. 323; *Daly v. Pennie,* 86 Cal. 552, 21 Am. St. Rep. 61, 25 Pac. 67; *In re Garraud,* 36 Cal. 277; *In re Burton's Estate,* 93 Cal. 459, 29 Pac. 36. A careful consideration of the above cases discloses that they deal with the question of the effect of the decree of the probate court in the final distribution of the estate of a deceased person. If respondent was claiming under the will of Levi Harris, or was attempting to set up a claim as an heir of his estate, then the law announced in the above authorities would control.

The California court in *Chever v. Ching Hong Poy,* 82 Cal. 68, 22 Pac. 1081, distinguishes the cases there referred to from the one at bar; the facts in this case seem to be directly in line with the contention of respondent. Mr. Justice McFarland, speaking for the court, says: "The probate court has jurisdiction to determine who are the legal heirs of a deceased person who died intestate, and who are the devisees or legatees of one who died intestate, but its determination of such matters does not create any new title. It merely declares the title which accrued under the law of descents or under the provisions of the will. The decree of distribution has nothing to do with the contracts or conveyances which may have been made by heirs, devisees or legatees of or about their shares of the estate either among themselves or others; such matters are not before the probate court and over them it has no jurisdiction. An heir may contract about or convey the title which the law has passed upon him on the death of his ancestor, and the validity or force of such contract is not affected by the fact that a probate court afterward by its decree of distribution declares his asserted heirship and title to be valid." It is then held that section 1678 of the Civil Code of California does not control the case under consideration, and this is the section controlling the cases cited by appellant.

In *Re Burton's Estate,* 93 Cal. 459, 29 Pac. 36, California case cited by appellant, the court referring to *Chever v. Ching Hong Poy,* says: "But that case was not a proceeding under section 1664 of the Code of Civil Procedure, nor did it involve any question as to the constitution or constitutionality of that section, nor is there any allusion to that section in the opinion."

In *Re Burdick's Estate,* 112 Cal. 387, 44 Pac. 734, the same doctrine is upheld. The syllabus says: "3. Trustees claiming part of an estate as a trust fund, but who are not named in the will and claim no rights under it and have presented no claim against the estate, cannot appeal from a decree of the probate court settling the final accounts of the executor and ordering distribution."

In *Martinovich v. Marsicano,* 137 Cal. 354, 70 Pac. 459, a very recent case from California, the court reaffirms the last cases cited from that court. To the same effect, see *Dobberstein v. Murphy,* 44 Minn. 526, 47 N. W. 171; *Hall v. Pierson,* 63 Conn. 332, 28 Atl. 544.

It is urged by counsel for appellant that the court erred in not permitting the appellant to testify to the trust agreement between himself and his mother, by which she engaged herself to hold the property he conveyed to her and to see that it was distributed to him in accordance with the terms of his father's will.

Subdivision 3 of section 5957 of our statutes says, in defining who shall not be witnesses, parties or assignors of parties to any action or proceeding or persons in whose behalf an action or proceeding is prosecuted against an executor or an administrator, upon a claim or demand against the estate of a deceased person as to any matter of fact occurring before the death of such deceased person.

We think this provision of the statute controls, and that there was no error in the ruling of the court. (*Rice et al. v. Rigley et al.,* 7 Idaho, 115, 61 Pac. 290.).

We conclude that the transfer by appellant of the property described in the bill of sale to his mother was for a valuable consideration, made in good faith and was binding upon appellant; that he had such interest in the property by the terms of his father's will as would permit him to convey as shown by the bill of sale to his mother.

The judgment of the lower court is affirmed with costs to respondents.

Sullivan, C. J., and Ailshie, J. concur.