(June 26, 1917.)

JULIE  A.  McKEEHAN, Respondent, v. VOLLMER-CLEARWATER  COMPANY, LIMITED, a Corporation, Appellant.

[166 Pac. 256.]

Husband and Wife—Wife's Separate Property—Estoppel of Wife—Evidence—Appeal—Harmless Error.

1.   Where in a trial to the court without a jury, the court denies a motion to strike testimony as to the receipt of money by draft in exchange for the return of a deed, based on the ground that the deed and draft are the best evidence, and testimony is subsequently

introduced showing that the deed was burned and never recorded, that the person who sent the draft for the drawer thereof was dead, that neither the drawer nor drawee knew where the draft was procured and that the records of the bank at which the draft was cashed were lost or destroyed, the error in refusing to strike the testimony was not prejudicial.

2. In a suit by a wife to quiet title to real estate, sold on execution against her husband, evidence *held* sufficient to support the finding that the property was purchased with the separate funds of the wife and not with the proceeds of a sale of community property.

3. Where there is a conflict of evidence as to whether property claimed as separate property of the wife was purchased out of the proceeds of the sale of community property, and the trial court finds that it was not so purchased, the finding will not be disturbed.

4. A married woman purchased real property with her own funds, allowing her husband to act as her agent in the transaction and the title was taken in the name of her husband contrary to her instructions. The wife, being unable to read, believed her husband's statement that the title was in her name, and nothing happened to put her on inquiry or arouse her suspicions to the contrary.

5. *Held*, that she was not estopped to claim title as against an execution creditor of her husband.

[As to when resulting trust arises in favor of either husband or wife, 127 **Am. St.** 252.]

APPEAL from the District Court of the Second Judicial District, for Latah County.   Hon. Edgar C. Steele, Judge.

Action to quiet title.   Decree for plaintiff.   *Affirmed.*

A. H. Oversmith, for Appellant.

"In transactions of this kind between husband and wife, where the wife is attempting to protect property which she claims is her separate property from the debts of her husband, which has been standing in his name, the evidence ought to be clear and convincing, and the best evidence that can be produced ought to be presented on the trial." (*Chaney v. Gauld Co.*, 28 Ida. 76, 152 Pac. 468; 17 Cyc. 465; *Mendenhall v. Elwert*, 36 Or. 375, 52 Pac. 22, 59 Pac. 805; *Meyer v. Kinzer*, 12 Cal. 247, 73 Am. Dec. 538.)

A married woman may be estopped from claiming her separate property if she has allowed the title to remain in the name of her husband by creditor who relies upon the record title and extends credit by reason of the apparent ownership of the property. (*Chaney v. Gauld, supra; First Nat. Bank v. Kissare,* 22 Okl. 545, 132 Am. St. 644, 98 Pac. 433; *McNeil v. Tenth Nat. Bank,* 46 N. Y. 325, 7 Am. Rep. 341; *Kalinowski v. McNeny,* 68 Wash. 681, 123 Pac. 1074.)   Neither is the fact that the plaintiff could not read or write sufficient to raise the bar of estoppel. (*Constantine v. McDonald,* 25 Ida. 342, 137 Pac. 531.)

G. W. Suppiger and M. T. Curry, for Respondent.

"Wife is not, as against creditors of her husband, estopped from claiming that lands standing in his name were purchased with her separate estate." (*De Berry v. Wheeler,* 128 Mo. 84, 49 Am. St. 538, 30 S. W. 338; *Murphy v. Clayton,* 113 Cal. 153, 45 Pac. 267; *Breeze v. Brooks,* 97 Cal. 72, 31 Pac. 743, 22 L. R. A. 256; 71 Cal. 169, 9 Pac. 670, 11 Pac. 885; *Kemp v. Folsom,* 14 Wash. 16, 43 Pac. 1100; *Garner v. Second Nat. Bank,* 151 U. S. 420, 14 Sup. Ct. 390, 38 L. ed. 218.)

Only the best evidence in existence must be produced. (*Lawrence v. Corbeille,* 28 Ida. 329, 154 Pac. 495; 17 Cyc. 518; 2 Ency. Evidence, 308.)

If a wife entrusts money of her separate estate to her husband, on the understanding that he is to invest it in real estate for her benefit, and take the title in her name, and he uses the money in purchasing the land, but takes the title in his own name, a trust results in favor of the wife. (*Martin v. Remington,* 100 Wis. 540, 69 Am. St. 941, 76 N. W. 614; *English v. Law,* 27 Kan. 242; *Howard v. Howard,* 52 Kan. 469, 34 Pac. 1114; *Heinrich v. Heinrich,* 2 Cal. App. 479, 84 Pac. 326; *Riley v. Martinelli,* 97 Cal. 575, 33 Am. St. 209, 32 Pac. 579, 21 L. R. A. 33; *Murphy v. Clayton, supra.*)

FLYNN, District Judge.—Claiming certain real estate as her separate property, respondent, a married woman, sues to

quiet title thereto as against a deed obtained by appellant under an execution issued against respondent's husband. The cause was tried to the court and findings and decree were made in favor of respondent.

The principal errors assigned are the insufficiency of the evidence to support the findings, error in finding that the respondent is not estopped to assert claim to the property, and error as to the admission and rejection of certain evidence.

The record discloses that respondent and her husband are totally illiterate, neither one being able to read or write. Respondent testified that on May, 1904, she received $750 from her father in lieu of certain real estate located in the mountains of Tennessee, which he had deeded to her as a gift nine or ten years before; that her father wrote to her asking her if she would rather have $750 instead of the land; that she assented to this proposition and had the original deed returned to him with instructions to send the money in her husband's name; that the reason she directed it to be sent in her husband's name was that she was sick and could not look after anything; that her husband cashed the draft, which came in a letter, bringing the amount to her in gold.

At the conclusion of her evidence, no objection thereto having been theretofore made, a motion was made to strike her testimony with reference to getting the money from her father by a draft, and with reference to getting the money out of the land, for the reason that the testimony is merely secondary and is not the best evidence, and that the written deed from her for this land and the canceled draft are the best evidence. This motion was denied and the ruling of the court thereon is assigned as error.

As indicated in the opinion of this court in *Chaney v. Gauld Company*, 28 Ida. 76, 152 Pac. 468, this motion should have been granted; but, inasmuch as this was a trial to the court without a jury and respondent's son subsequently testified that he had returned the deed at her request to respondent's father, and respondent's father and sister testified that the deed had been burned by the father on its return to him, and

that it had never been recorded, and, inasmuch as there was also subsequent testimony to show that the draft or check sent by the father had been so sent by the sister and wife of the father, and that they were dead, and that he did not know at what bank they got the check or draft; and there was also testimony on the part of the cashier of the Pullman Bank that he had some recollection of McKeehan having received some money by check from Tennessee, and it was also shown that the remittance sheets and records of the Pullman Bank were lost or destroyed, we think the error was harmless.

After selling their homestead, respondent and her husband moved to Pullman, Washington, in February, 1904. Respondent testified that because she could not count or tell the denomination of any money except gold or silver, she caused her husband, to whom the check or draft was sent by her father, to obtain gold coin therefor. She claims to have thereafter kept the coin in a sack between the feather bed and straw tick, and during her occasional absence from home to have transferred it to a baking-powder can hidden in a carefully concealed hole in the chicken-house. Early in the fall of 1904, respondent began to look for a place that she would be able to pay for with her own money, and in the spring following, she learned of the tract of land in controversy. She sent her husband to look at the land, and on his favorable report, gave him $40 in gold coin to bind a bargain for the land. The husband paid this money to the owner's agent with the understanding that he was to return in a few days to obtain the deed. Respondent gave her husband $610, in gold coin, the amount necessary to complete the purchase price of the land, and instructed him to take the deed in her name. The husband, failing to meet the agent at the agreed place, returned home and gave the money back to his wife, depleted, however, to the extent of $105, or $110, which the husband used to pay off a chattel mortgage on some cattle belonging to a friend, the cattle subsequently being traded in as a part of the purchase price and going in part to the mortgagee and in part to the vendor of the land. The respondent had no knowledge of this transaction, and, apparently, no

knowledge of the diminution of her hoarded gold until after this suit was commenced. A few days after the chattel mortgage transaction, the agent who sold the land came to Pullman, where the McKeehans lived, bringing the deed with him, and the balance of the purchase price, less the amount of a mortgage on the land, was delivered in gold by respondent to her husband and by him paid to the agent.

There is no evidence to show that the husband requested that the deed be made in his wife's name, in conformity with her instructions to him; and in the deed the husband was named as grantee. The husband gave the deed to his wife, and in response to her inquiry as to whether he had the deed fixed the way she told him to, he told her he "guessed it was." She put the deed away in a keepsake box where it remained until December, 1905, when it was recorded at her husband's suggestion.

During all of this time, and up to the time when the land was sold under execution in May, 1913, respondent did not know that title thereto stood in her husband's name and believed that the legal title was in her own name.

In May, 1905, respondent gave her husband three hundred dollars in gold coin to pay on the mortgage, all of which, except five dollars, was so applied. Later, during the same year, all the balance of the mortgage, except the five dollars, was paid, through her husband, out of her gold coin, and the five dollar balance was paid by delivering a hog to the mortgagee in June, 1907, and the release recorded. In the fall of 1905, the McKeehans, with their family, moved on the land, and since that time have maintained their residence there. McKeehan began dealing with appellant company and was also engaged in hauling wood, in farming and in working on the farm of appellant's manager.

Respondent did not know that her husband was getting credit of the company, but at all times believed that he had money due by reason of wood and other products delivered. By no word or act did she indicate that she knew that the title to her land stood in the name of her husband, nor did

she in any manner lead appellant to extend credit to her husband.

On April 8th, 1911, McKeehan confessed judgment in favor of appellant company in the sum of $1,050, and execution thereon was issued on April 2d, 1913, the sale being advertised to take place on May 3d, 1913. A day or two before the date of sale, a neighbor informed respondent that her place was about to be sold, and the next morning respondent left for Moscow to consult an attorney for the purpose of protecting her property. Notice of her claims was given at the sheriff's sale and subsequently this action was brought.

Appellant claimed that the property in dispute was purchased with the proceeds of the sale of the homestead owned by the respondent and her husband but introduced no direct evidence on this point. There is ample evidence in the record to show how this money was spent. Appellant introduced checks to show that during February and March, 1904, the respondent's husband drew from the Pullman bank $1,605, being the total amount deposited by him after the sale of the homestead; but even if these checks should justify the inference that out of this money came the money used to purchase the land in dispute, we are satisfied that they could have no greater effect in this connection than to make a conflict of the evidence, and, under the familiar rule, this court, under such a condition of the record, will not disturb the finding of the trial court.

Respondent's evidence as to the existence of the deed from her father, and as to the possession of the money in gold, is corroborated in numerous details by her husband, her father, her sister and her son, and while we are in accord with the rule that in a suit of this nature the testimony of relatives should be closely scrutinized, we are confronted with the fact that there is no direct evidence contradicting their story. Under this condition of the record, we hold that the evidence is sufficient to support the finding that the property in dispute was purchased with the separate funds of respondent and was her sole and separate property.

The contention is further made that respondent is estopped under the facts from claiming this property as her separate property, and in support of this contention the decision of this court in the case of *Chaney v. The Gauld Company, supra,* is relied on. It will be remembered that in this case both the husband and wife are wholly illiterate. The trial court found that respondent did not know that the title was not in her name, and the evidence supports such finding. Assuming that appellant company gave credit to respondent's husband on the strength of his being the holder of the record title, a doubtful assumption under the record, we think that the rule of estoppel announced in the *Chaney v. The Gauld Company Case* is not applicable where there is no evidence to show that the wife knew or should have known that the title to her property was in her husband's name. Respondent relied on her husband's assurance that title to property purchased with her money, was taken in her own name. She did or said nothing to anyone to indicate a contrary belief or knowledge, nor was anything brought home to her in any way to cause her to make inquiry or arouse her suspicions that the title was in the name of her husband. She could not read the deed; her husband could not read it. As between the appellant company and the respondent, there was no duty on her part to procure someone to read it for her, because the company was not at the time the deed was received or recorded even remotely or indirectly interested, and if the duty of the respondent to ascertain the contents of the deed subsequently arose, there is nothing in the record to show how or when it arose. This is not a case where a wife knowingly permitted the title to her land to stand in the name of the husband, or permitted such condition of the record through negligence or carelessness, and thereby left the way open to the husband to procure credit on the strength of his record title. Knowledge, either actual or implied, on the part of the wife that the title is in her husband's name is a prerequisite to estoppel in such a case. We think that the wife is not estopped to claim title here.

The errors assigned as to the rejection of certain testimony are not discussed in argument or brief, and therefore we feel that it is not necessary for us to pass on them.

The decree should be affirmed, and it is so ordered.   Costs awarded to respondent.

Budge, C. J., and Rice, J., concur.