[Civ. No. 14847. Second Dist., Div. Two. Feb. 13, 1946.]

CLIFFORD STANTON HEINZ, Respondent, v. ELIZABETH HEINZ, Appellant.

62

Maurice Rose for Appellant.

Louis Bean, Jr., and A. E. Coppleman for Respondent.

McCOMB, J.—From a judgment awarding the custody of the minor son of the parties hereto to plaintiff, defendant appeals.[1]

There are also appeals from orders (a) modifying the foregoing judgment and (b) denying defendant's motion for leave to renew an application to modify the judgment.

The evidence being viewed in the light most favorable to the plaintiff (respondent), and pursuant to the rules set forth in *Estate of Isenberg*, 63 Cal.App.2d 214, 216 et seq. [146 P.2d 424], the record discloses the following facts:

On June 27, 1938, plaintiff and defendant were married. In the latter part of March, 1939, defendant discovered that she was pregnant with the child here involved and which was subsequently born on December 28, 1939. Shortly after defendant discovered she was pregnant, she on several occasions stated that she wanted an abortion and solicited the aid of the plaintiff in procuring the same. This plaintiff refused to do. At about the time when plaintiff refused to permit defendant to have an abortion she told him he could have the custody of their child providing she could have full custody of a Cocker Spaniel dog which they owned. Plaintiff told defendant that he didn't believe her and that it shocked him that any prospective mother could make such a statement. Defendant replied that she meant it all right and if he would write the statement she would sign it. Thereafter defendant signed a statement in accordance with the tenor of her offer.

During the entire married life of the parties defendant possessed a violent and ungovernable temper and evidenced

---

[1]For a prior phase of this litigation between the same parties see *Heinz* v. *Heinz*, 68 Cal.App.2d 713 [157 P.2d 660].

such temper on numerous occasions by such acts as the following:

(a) Attempting to jump out of a hotel window when plaintiff refused to buy her a ring;

(b) Attempting to jump out of a hotel window when they engaged in an argument relative to the purchase of furniture;

(c) Smashing sterling silver dresser sets on two different occasions;

(d) Throwing an alarm clock and heavy bookends at plaintiff;

(e) Throwing a diamond wrist watch, a wedding gift from plaintiff, against a wall and smashing it when plaintiff refused to take her to Ciro's (a restaurant in Hollywood); and

(f) Throwing dishes to the floor and breaking them in the presence of their minor son.

During the entire life of the parties' son defendant was abusive and intolerant of the child, frequently using profane and abusive language in his presence. This was evidenced by the conduct of defendant in:

(a) Becoming abusive of the child if he would not eat quantities of food far in excess of the amount prescribed by the attending physician;

(b) Refusing to follow a doctor's prescribed change in formula for the child but feeding the infant unripened bananas over the protest of a nurse who warned defendant that such feeding might kill the child;

(c) Striking and beating the child on numerous occasions;

(d) Permitting the child to fall to the floor; and

(e) Using profane language in the presence of the child such as "God damning" the child, calling him a "darned brat," "darned kid," and saying to the child, "I wish I had never had you," "Wish you were dead," and "I will beat you to a bloody pulp."

On or about January 4, 1944, defendant exposed her seminude body to be photographed, at the time executing a receipt and release in favor of the photographer whereby she authorized the use of such photographic poses consisting of two front views naked to the waist line and one front view full length in a standing position in which she wore only a transparent gown.

For more than a year prior to the entry of judgment in the present action defendant carried on relations unbecom-

ing to a wife and mother with a skiing instructor named Walter Von Neudegg in that she maintained an extensive correspondence with him, couched in the most ardent and romantic terms and committed other improper acts with Mr. Von Neudegg. On one occasion plaintiff found defendant in a hotel room with Mr. Von Neudegg, he being nude at the time. Defendant after the incident last mentioned, telephoned plaintiff and said, "You certainly got the goods on me this time, what do you intend to do about it?" Plaintiff replied, "I think you will have to come to me and discuss this infatuation for Walter, if that is what it is." Plaintiff said, "I would like to have it done quietly and without any scandal." Defendant remarked, "Well, I don't care, I love Walter. You should know that now, and I want to marry him." When asked regarding their son, defendant said, "I will worry about him later, but I want to marry Walter, and that is that."

Defendant does not question the sufficiency of the evidence to sustain the facts set forth above[2] but urges in support of reversal of the judgment three propositions which will be stated and answered hereunder seriatim:

First: *The trial court committed prejudicial error in not making findings upon material issues of ultimate facts since the trial court did not find, among other things, (1) whether or not Mr. Von Neudegg on January 23, 1944, without defendant's knowledge had been "planted" in her bathroom by plaintiff and his agents; (2) whether or not on August 30, 1943, Mr. Von Neudegg was in defendant's bedroom with*

---

[2]During the course of the oral argument counsel for appellant said: "The present appeal is concerned with errors which the court committed in omitting to make various findings set out in detail in the briefs. ... My purpose in appearing here is not to argue the facts. The primary purpose is to review the action of the trial court in failing to make findings which we claim were tendered by the issues in this case and which the importance of the case to the parties require to be definitely found. ... We insist we have the right to have the trial judge who heard the witnesses, come to the conclusion upon some of the issues which are crucial and which go to the right of custody, and which if found as we claimed were required to be found would destroy the fitness of the father to have the custody of this child. ... I shall not argue the facts in this record, but we are insisting in laying before this court this consideration, namely, that this appeal is based upon matters solely of law and is not a case in which there has been a controversy as to facts and the court has found one way and the appellant is asking this court to find another way. Our complaint is that under the statutory duty of the court there is an omission to make findings which we think are necessary for the purpose of projecting the proper issues in any appeal to the reviewing court."

*defendant for a period of time, and whether or not plaintiff hired Mr. Rudd to be a false witness; (3) whether or not a certificate of Dr. Batell stating that the minor child of the parties had certain bruises which might have been caused by blows or falls was false; (4) whether or not Josephine Douglas was a fit person to act as a nurse for the child; and (5) whether or not plaintiff subjected defendant to cruel and inhuman conduct.*

This proposition is untenable. The ultimate issues of facts in this action were:

First: Whether or not plaintiff was a fit and proper person to have the custody of the minor child;

Second: Whether or not the defendant was a fit and proper person to have the custody of said minor child.

The court found:

First: "That the plaintiff is a fit and proper person to have the care and custody of Clifford Stanton Heinz, the third, the minor son of the parties hereto."

Second: "That the defendant is not a fit and proper person to have the permanent custody of the said minor child, Clifford Stanton Heinz, the third."

The law is established in this state that findings should be of ultimate facts and that it is unnecessary to make findings of probative or evidentiary facts, for a finding of ultimate fact includes a finding of all the probative facts necessary to sustain it. (24 Cal.Jur. (1926), p. 968, § 203; 10 Cal.Jur. 10-Yr.Supp. (1936), p. 751, § 203.)

The law is likewise established in this state, where the question of the custody of a child is at issue, that if there are findings that one parent is a fit and proper person to have the custody of the child and that the other parent is not a fit and proper person to have such custody, such findings constitute findings upon the ultimate issues of fact. These findings include findings upon all probative facts necessary to sustain them and it is not necessary for the court to make a finding relative to the probative facts. (*Brown* v. *Brown,* 92 Cal.App. 276, 283 et seq. [268 P. 401]. See, also, *Simmons* v. *Simmons,* 22 Cal.App. 448, 455 et seq. [134 P. 791]; *Crater* v. *Crater,* 135 Cal. 633, 635 [67 P. 1049]; *Kepfler* v. *Kepfler,* 134 Cal. 205, 206 [66 P. 208]; *Stampfli* v. *Stampfli,* 53 Cal. App. 126, 131 [199 P. 829].)

Applying these rules of law to the finding of facts in the present case it is clear that the trial court made findings upon

the issues of ultimate facts involved and that it was unnecessary to make findings upon probative and evidentiary facts as contended by defendant.

Second: *The trial court committed prejudicial error in sustaining objections to questions asked:*

(1) *Plaintiff as to whether he went to Dr. Batell for the purpose of getting the doctor to approve of his sending for Josephine Douglas to act as a nurse for the minor child of the parties;*

(2) *Mr. Deisler whether he had any reason for shadowing and following defendant and Mr. Von Neudegg in Spartanburg, South Carolina;*

(3) *Mr. Deisler as to whether he had any reason for listening to voices in defendant's hotel room in January, 1944.*

This proposition is without merit. ■ We will not consider whether the trial court properly sustained objections to the questions set forth above, for the reason that the law is established in California that where a question to which an objection is sustained does not in itself indicate that the answer to it will be favorable to the party seeking to introduce the testimony, before the ruling will be reviewed on appeal an offer of what is proposed to be proven must first be made to the trial court so that the reviewing court can determine whether the proposed evidence would have been *material* and *beneficial* to the party offering it. (*Sumida* v. *Pacific Auto. Ins. Co.,* 51 Cal.App.2d 472, 478 [125 P.2d 87]; *Travelers Fire Ins. Co.* v. *Brock & Co.,* 30 Cal.App.2d 115, 117 [85 P.2d 904].) In the present case the questions to which objections were sustained did not indicate that the answers would be material or beneficial to defendant nor was any offer of proof made as to what answers the witnesses would give to the questions.

Third: *The trial court committed prejudicial error in permitting Mr. Ford to testify that he saw negatives and prints in a photographer's studio in New York which negatives and prints were pictures of defendant in the nude.*

This proposition is without merit. ■ The law is established in California that when a document is beyond the territory of this state it is a lost document so as to permit the introduction of secondary evidence as to its content. (*Zellerbach* v. *Allenberg,* 99 Cal. 57, 73 [33 P. 786]; *Estate of Baker,* 176 Cal. 430, 438 [168 P. 881]; *Mackroth* v. *Sladky,* 27 Cal.App. 112, 119 [148 P. 978].)

In the present case it is conceded that the negatives and prints concerning which Mr. Ford testified were outside the jurisdiction of California; therefore under the rule of law stated, secondary evidence as to the contents of said prints and negatives was properly admitted.

For the reasons above stated, and in view of the fact that an examination of the record fails to disclose any error, the judgment and orders appealed from are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.

A petition for a rehearing was denied March 5, 1946, and appellant's petition for a hearing by the Supreme Court was denied April 11, 1946.