511 P.2d 294

Erla SMITH, a/k/a Mrs. Ralph D. Smith, Mrs. R. D. Smith, Mascot Silver-Lead Mines, Inc., Plaintiffs-Respondents,

v.

Leonard W. SMITH, a/k/a L. W. Smith, L. Wilbur Smith, Appellant,

William A. Gaither et al., Defendants.

No. 11013.

Supreme Court of Idaho.

June 7, 1973.

Piatt Hull, Wallace, Leonard W. Smith, Spokane, Wash., for appellant.

Charles H. Kimball, Coeur d'Alene, for respondents.

McQUADE, Justice.

This case requires determination of the rights created by a complex series of property transfers among members of a family, some of whom are now deceased. The family consisted of George and Jennie Smith (hereinafter termed the father and mother) and their children, Leonard W. Smith (Leonard), Ralph D. Smith (Ralph), and Amy Smith Gaither (Amy). Plaintiff Erla Smith is the widow of Ralph D. Smith, while William and Frank Gaither are the heirs of Amy Smith Gaither. In 1935, the father, who owned the property in dispute, died. That property included parcel 1, an undivided ½ interest in a hardware store and the property on which it is situated in Kellogg, Idaho; parcel 2, a residential plot and dwelling in Kellogg; and parcel 3, an undivided ¾ interest in certain patented and unpatented lode mining claims. The remaining ½ interest in the hardware store and ¼ interest in the mining claims are not at issue. Plaintiff Erla Smith brought an action in district court to quiet title to the above described property interests. Defendant Leonard Smith filed a cross-complaint, a counterclaim and a third party complaint.

From the record it appears that on December 9, 1937, Amy and Leonard quitclaimed any interest in the disputed property to Ralph for the alleged purpose of dividing their interests in the father's estate. On May 27, 1938, a decree of distribution vested the mother with ½ of the estate's interest in the three disputed parcels and divided the other ½ interest of the estate in each parcel into three equal shares, one for each of the three children. Subsequently, on June 6, 1938, the three children conveyed all their interest in parcel 1 to the mother and on the same date the mother, Leonard and Amy conveyed their interests in parcel 2 to Ralph. Then on March 9, 1939, the mother conveyed her interest in parcel 1 and the patented claims in parcel 3 to Ralph. The mother died on August 19, 1939, owning ½ of the ¾ estate interest in the unpatented claims of parcel 3. At that time Ralph apparently held title to the rest of the disputed property interests.

On December 8, 1944, Ralph conveyed to Leonard a ⅙ interest in parcel 1, a ½ interest in parcel 2 and a ¼ interest in parcel 3. Leonard asserted at trial that Ralph also conveyed to Amy a ⅙ interest in parcel 1 and a ¼ interest in parcel 3, but the

trial court found no such conveyance. Amy attempted to convey the ⅙ interest in parcel 1 to Leonard on May 1, 1947, but the trial court ruled that she had no such interest to convey.

Leonard Smith, on December 31, 1951, conveyed by quitclaim deed to Amy his entire interest in parcels 1, 2 and 3. He argues that this transfer was in trust for his son; but the district court held it to be an absolute conveyance.

Amy Smith Gaither died on January 8, 1958, leaving her sons William and Frank as heirs to her estate. Ralph Smith died on April 1, 1965. When his estate was distributed on April 18, 1966, his interests in parcels 1, 2 and 3 were given to his widow, Erla Smith.

Respondent Erla Smith sought in the lower court action to quiet title to the property here in question. The defendants she named included Leonard Smith, William A. Gaither, Frank Gaither, Amy S. Gaither, deceased, George A. Smith, deceased, Jennie E. Smith, deceased, and the unknown heirs, devisees and husbands and wives and the unknown owners and claimants to the property. Leonard Smith filed a cross-complaint, a counter claim and a third party complaint. A default to this cross-complaint, counter claim and third party complaint was entered against William A. Gaither, Frank Gaither, and a number of other possible beneficiaries. The district court found that the disputed portion of parcel 1 belonged in a ⅓ undivided interest to Erla Smith and in a ⅙ undivided interest to Amy Smith Gaither, her heirs or successors. Erla Smith and Amy Smith Gaither were also found each to own an undivided ½ interest in parcel 2. Erla Smith was found to own ½ of the patented claims and ⅛ of the unpatented claims. Amy Smith Gaither was found to have owned ¼ of the patented claims and ¼ of the unpatented claims. The mother, her heirs or successors were found to own a ⅜ interest in the unpatented claims.

Appellant Leonard Smith raises two principal contentions in his fifteen assignments of error. *First,* he argues that there was competent evidence to show that Ralph did convey by deed a ⅙ interest in parcel 1 and a ¼ interest in parcel 3 in 1944. *Second,* he maintains that the evidence at trial proved that the deed he executed to Amy in 1951 was a trust deed rather than a quitclaim deed.

I

■ If the district court had found that a valid conveyance from Ralph to Amy had occurred in 1944, then the 1947 conveyance from Amy to Leonard would have been valid. Leonard testified that on December 8, 1944, Ralph gave him a deed conveying to Amy a ⅙ interest in parcel 1 and a ¼ interest in parcel 3. He further testified that he transmitted the alleged deed to Amy, and offered in evidence a carbon copy of the letter of transmittal. The trial court rejected the letter on the grounds that it was immaterial. That ruling was erroneous because the letter logically tended to prove or disprove a fact in issue.[1] The letter (Exhibit H) reads as follows:

> "15 December 44
> GT Montana

"Dear Amy

I got our deeds last week from Ralph as we agreed. I got ¼ mining claims, ⅓ of our ½ in the Hardware Store and ½ of the Goss House also vacant lot in Sunnyside. You got ¼ in the mining claims and ⅓ of our ½ in the Hardware. It was late when I saw Ralph and he was busy so I left my deed with Bob Fishback, Star Jewelers in his big safe. Put yours away or file it. I have arranged with Ralph to collect my rents and have figured to put him on my bank

---

1. *See* C. McCormick, Law of Evidence 314 (1954) ; G. Bell, Handbook of Evidence for the Idaho Lawyer 107 (2d ed. 1972) ; Blankenship v. Brookshier, 91 Idaho 317, 420 P.2d 800 (1966) ; State v. Farris, 48 Idaho 439, 282 P. 489 (1929).

account so if anything happens to me. He has my will which provides that you and Ralph split what I leave.

Love LWS"

However, in the order denying a motion to reconsider, the district court cited the "best evidence" rule as another reason to deny admission of the letter. The best evidence of the contents of an alleged deed would have been the deed itself.[2] I.C. § 9–411 provides in part: "There can be no evidence of the contents of a writing other than the writing itself, except in the following cases: 1. When the original has been lost or destroyed; in which case proof of the loss or destruction must first be made * * *." Appellant's testimony indicated that the deed here in question was mailed to Amy Smith Gaither in California in 1944. The record discloses the following testimony regarding this alleged deed:

"Q. Mr. Smith, were you familiar with the contents of the deed that Ralph executed to Amy and gave it to you in Spokane in 1944?

"A. Yes, sir.

"Q. What particular properties did it purport to convey to her?

"A. It gave her one-sixth interest in the hardware store and an undivided one-quarter in these maining [sic] claims I have named."

When a document is lost the introduction of secondary evidence as to its contents is permissible.[3] The letter, as secondary evidence of the alleged deed in question here, was admissible.

The weight to be given the letter, Leonard's testimony concerning the alleged deed and other evidence relating to the existence and contents of the alleged deed is for the trial court to determine. Although the parol testimony of appellant, recalling the contents of the deed, was also secondary evidence, the court admitted the testimony over respondent's objection that it was "irrelevant, immaterial and incompetent." Even if the evidence were inadmissible under the best evidence rule, the district court's ruling was proper since the specific objection was not made.[4] Moreover, the record shows that additional parol evidence of the alleged deed was received without objection at another point in the trial. When a party fails to object to secondary evidence of a document, such secondary evidence is deemed competent.[5]

The district court also, in an order denying appellant's motions to re-open the trial, refused to consider other testimony offered to establish the existence and contents of the alleged deed. The first offer was of additional testimony from a Washington state court proceeding in 1953, and was made pursuant to authority granted at the conclusion of the trial by the district court. The second offer was of newly discovered evidence as established by affidavit, of a letter from Ralph to Amy dated in 1947. The offers were heard together and an order of denial was entered by the district court with no reasons given. Before a case is reopened, some reasonable excuse such as oversight, inability to produce or ignorance of the existence of the evidence must be established by the moving party.[6] However, it is within the discretion

2. *See* G. Bell, Handbook of Evidence for the Idaho Lawyer 210 (2d ed. 1972) ; McKeehan v. Follmer-Clearwater Co., 30 Idaho 505, 166 P. 256 (1917).

3. *See* Heinz v. Heinz, 73 Cal.App.2d 61, 165 P.2d 967 (1946) ; Zellerbach v. Allenberg, 99 Cal. 57, 33 P. 786 (1893).

4. *See* White v. Larsen and Shafer, 51 Idaho 187, 3 P.2d 994 (1931) ; Hayhurst

v. Boyd Hospital, 43 Idaho 661, 254 P. 528 (1927).

5. State v. Roe, 19 Idaho 416, 113 P. 461 (1911) ; *see also* G. Bell, Handbook of Evidence for the Idaho Lawyer 213 (2d ed. 1972).

6. Giffen v. City of Lewiston, 6 Idaho 231, 247, 55 P. 545 (1898) ; *see also* G. Bell, Handbook of Evidence for the Idaho Lawyer 53 (2d ed. 1972).

of the trial court to refuse to reopen a case after a party has rested.[7] In this case, the affidavit averred without contradiction that the newly discovered evidence had been previously unknown. We conclude that the lower court here abused its discretion in not reopening the case to admit the evidence submitted pursuant to its authority and the newly discovered evidence. The evidence was relevant and deserved full consideration in relation to all other competent evidence.

## II

■■■ Appellant argues that the 1951 quitclaim deed from Leonard to Amy was in reality a trust deed. It is to be noted that a default was entered against Amy, William and Frank Gaither as to appellant's third party claim. Testimony by appellant concerning the 1951 quitclaim deed was held inadmissible on the basis of Coats v. Harris[8] and I.C. § 9–202(3).[9] It was error to hold the testimony inadmissible on the basis of this authority. The authority cited is inapplicable because the action here is not against a party having an interest in or a representative of Amy's estate. A review of Idaho cases dealing with the attempt to impress a trust on the property of a decedent, and with the application of the Idaho Deadman Statute in such a case, is found in Ferrell v. McVey.[10] Adverting to the purpose of I.C. § 9–202 in *Ferrell,* the Court stated: "Therefore, to the extent *death has sealed the lips of deceased as to*

any claimed trust agreement not in writing, the statute closes the lips of the surviving claimant or assignors." [11] An action to establish or enforce a trust against a decedent's estate constitutes a claim or demand against the estate within the meaning of I.C. § 9–202.[12] If a representative or party having an interest in Amy's estate objected on the basis of I.C. § 9–202 to the testimony of appellant concerning the 1951 quitclaim deed, then such an objection might have properly been sustained. Neither Erla Smith nor Mascot Mines, however, had standing to object to the testimony of appellant concerning the 1951 quitclaim deed on the basis of the Idaho Deadman Statute. Since Amy and her heirs were in default, the exclusion of the testimony was improper and the decision of the district court as it relates to the interests of Amy's estate in the disputed property must be reconsidered.

■■■ Evidence concerning the relationship of Amy's estate to this case was properly admitted under the provisions of I.R. C.P. 55(b)(2), which states in part:

"If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper."

7. County of Bonner v. Dyer, 92 Idaho 699, 702, 448 P.2d 986 (1968); Silkey v. Tiegs, 51 Idaho 344, 350, 5 P.2d 1049 (1931); Kinzell v. Chicago Ry. Co., 33 Idaho 1, 18, 190 P. 255 (1920); Pehrson v. C. B. Lauch Construction Co., 237 F.2d 269, 272 (1956).

8. 9 Idaho 458, 75 P. 243 (1904).

9. I.C. § 9–202(3), commonly referred to as the Deadman Statute, provides: "The following persons cannot be witnesses: * * * 3. Parties or assignors of parties to an action or proceedings, or persons in whose behalf an action or proceeding is prosecuted against an executor

or administrator, upon a claim or demand against the estate of a deceased person, as to any communication or agreement, not in writing, occurring before the death of such deceased person."

10. 71 Idaho 339, 232 P.2d 134 (1951).

11. *Id.,* 71 Idaho at 343, 232 P.2d at 136.

12. Annot., 54 A.L.R.2d 1103, 1126; Ferrell v. McVey, 71 Idaho 339, 232 P.2d 134 (1951); Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769 (1949); Coats v. Harris, 9 Idaho 458, 75 P. 243 (1904); Rice v. Rigley, 7 Idaho 115, 61 P. 290 (1900).

## III

Appellant gives less emphasis to the remaining assignments of error. He attacks the admission into evidence of Exhibit 47, which contained excerpts from a Washington State court proceeding, on the ground that it was improperly authenticated. Both Exhibit 47 and any other testimony from other trials should have been authenticated according to I.C. § 9–312.[13] Copies of testimony taken by other courts come within the scope of I.C. § 9–310.[14] Accordingly, the admissibility of these judicial records shall be determined pursuant to the requirements of I.C. § 9–312 upon retrial of this cause.

Appellant assigns error to the admission of Exhibit 32, a receipt by Leonard for his distributive share of his mother's estate probated in the State of Washington, claiming that the receipt was without relevance or materiality. The share Leonard received in the Washington property could be related to the share of Idaho property due him, thus this evidence could be relevant and was admissible.[15]

Appellant's assignments of error allege that much of the disputed property is his under the doctrine of adverse possession. In Pleasants v. Henry,[16] this Court stated the familiar rule governing adverse possession:

> " 'All the authorities agree that, in order to bar the true owner of land from recovering it from an occupant in adverse possession and claiming ownership through the operation of the statute of limitation, the possession must have been, for the whole period prescribed by the statute, actual, open, visible, notorious, continuous, and hostile to the true owner's title and to the world at large.' "[17]

It is a well established rule in Idaho that the burden of proving each and every element of adverse possession by clear and satisfactory evidence is upon the party relying upon title by adverse possession.[18] Knowledge of occupation is not the same as knowledge of adverse possession. Since the parties here were brothers and sister, the occupation was not hostile since no equivocal act by appellant put Amy, Ralph or their heirs on notice of the alleged adverse possession.[19] The claim of adverse possession here is unfounded.

If appellant's claims ultimately are denied on remand, then consideration should be given to restitution for sums he mistakenly spent on the three parcels of property in question. When a person has been unjustly enriched at the expense of another he must make restitution to the

---

13. I.C. § 9–312 reads: "*Authentication of judicial record.*—A judicial record of this state, or of the United States, may be proved by the production of the original, or by a copy thereof, certified by the clerk or other person having the legal custody thereof. That of another state or territory may be proved by the attestation of the clerk and the seal of the court annexed, if there be a clerk and seal, together with a certificate of the chief judge or presiding magistrate, that the attestation is in due form."

14. I.C. § 9–310 reads: "*Judicial record defined.*—A judicial record is the record or official entry of the proceedings in a court of justice, or of the official act of a judicial officer, in an action or special proceeding."

15. *See* G. Bell, Handbook of Evidence for the Idaho Lawyer 107 (2d ed. 1972), where it is stated that: "Any legal evidence which logically tends to prove or to disprove a fact in issue is relevant and therefore admissible, provided it is not too remote or speculative or otherwise of such slight probative value as to justify the court in excluding it on the ground of immateriality."

16. 36 Idaho 728, 213 P. 565 (1923).

17. *Id.*, 36 Idaho at 735, 213 P. at 567. *See also* Flora v. Gusman, 76 Idaho 188, 279 P.2d 1067 (1955); Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209 (1952).

18. Flora v. Gusman, *supra* note 17; Salvis v. Lawyer, 73 Idaho 469, 253 P.2d 589 (1953); Brown v. Brown, 18 Idaho 345, 110 P. 269 (1910).

19. *See* Florida v. Gusman, *supra* note 17; Velasquez v. Mascarenas, 71 N.M. 133, 376 P.2d 311, 318 (1962).

484

other.[20] "Restitution" and "unjust enrichment" are the modern designations for the older doctrine of "quasi contracts." [21] The substance of an action for unjust enrichment lies in a promise, implied by law, that a party will render to the person entitled thereto that which in equity and good conscience belongs to the latter.[22]

Since there are some basic errors in the proceedings of the trial court, a new trial is ordered. Thus, appellant's remaining assignments of error dealing with the sufficiency of the evidence to support the verdict need not be considered here.

The judgment is reversed and the cause is remanded to the trial court for a new trial.

*Costs to appellant.*

20. Restatement of Restitution § 1 (1937).

21. *Hixon v. Allphin*, 76 Idaho 327, 333, 281 P.2d 1042 (1955).

