[L. A. No. 2594.　Department Two.—September 14, 1911.]

## O. M. KEESEY, Respondent, v. ANNA D. KEESEY, Appellant.

DIVORCE—INTERLOCUTORY DECREE FOR DESERTION OF HUSBAND BY WIFE —APPEAL—DECREE AGAINST EVIDENCE.—It is held, on this appeal by the wife from an interlocutory decree of divorce in favor of the husband for desertion by the wife, that in view of the evidence, the record shows no conflict, but that the evidence appears to be all one way and to show that, if there was any desertion at all, it could, both in fact and in law, be more reasonably asserted to be the desertion of the wife by the husband, and that it fails to show any willful desertion of the husband by the wife.

ID.—NATURE OF WILLFUL DESERTION—SEPARATION BY CONSENT NOT DESERTION.—Willful desertion is the voluntary separation of one of the married parties from the other with intent to desert, and is manifested by the refusal of either party to dwell in the same house with the other party when there is no just cause for such refusal. Separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion.

ID.—DECLARATION OF WIFE NOT ESTABLISHING DESERTION.—A declaration by the wife, made in temporary anger, to the effect that she would not live with her husband, proves no desertion, where within one month thereafter the husband and wife occupied the same house, in which she prepared the meals and they ate together, and she waited upon him in illness, although they occupied separate rooms.

ID.—DECLARATION WHILE LIVING TOGETHER IMMATERIAL.—A declaration by the wife while she and her husband were occupying the same house that she would not live with him again, amounts to nothing, as it did not accord with the fact of what she was then actually doing.

ID.—DEPARTURE OF HUSBAND—REMOVAL OF FURNITURE TO RANCH— CONSENT OF PARTIES—DIVORCE—COLLUSION.—That the husband departed from the house occupied by them, and removed the most of the furniture to his ranch, and told her that she was not to go with him, and that in a year he would get a divorce from her, and that she agreed to it, establishes no desertion by her, but it establishes the separation of the parties by consent, which cannot constitute desertion, and also establishes collusion, which would preclude the granting of a divorce to either party.

APPEAL from an Interlocutory Decree of divorce of the Superior Court of Los Angeles County and from an order denying a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

Smith, Miller & Phelps, for Appellant.

Wellborn & Wellborn, and J. W. Morin, for Respondent.

LORIGAN, J.—This is an action for divorce in which the defendant appeals from an interlocutory decree in favor of plaintiff and from an order denying her motion for a new trial.

The complaint alleged extreme cruelty and desertion which was denied by defendant and the court found in favor of the plaintiff on the ground of desertion only.

Appellant contends that this finding is not supported by the evidence.

There was not much evidence introduced in the case aside from the testimony of the parties themselves. Plaintiff and defendant were married in 1896 in Orange County in this state and lived together at various places—San Luis Obispo County, Los Angeles and the state of Texas—up to the time of the alleged desertion. Plaintiff was a widower at the time of his marriage and in December, 1906, he and his wife were living temporarily at the residence of his married daughter, Mrs. Hill, in Los Angeles. During some part of that month a serious altercation arose at the residence of Mrs. Hill between the parties—husband, wife, and daughter—resulting in Mrs. Hill ordering the defendant from her house. Defendant at once left. As to her departure plaintiff testified that "she left and said she would never live with me again. She went to the New Hampshire Street place and lived there. She said we would never live together there and I said I had a place to stay." Defendant at once took up her residence in a house on New Hampshire Street. Mrs. Hill, after defendant left her residence, moved all the articles belonging to defendant out of the house, placing them in a shed on her premises from which next day defendant had them removed to the house on New Hampshire Street. After the defendant left Mrs. Hill's residence the plaintiff remained there a few days when his daughter returned to her home in Texas. Upon the departure of his daughter plaintiff went to live with his wife at the New Hampshire Street house which contained four rooms and a kitchen. The plaintiff testified: "The defendant and I agreed

to both live in the New Hampshire Street house and we did so. I lived on one side and she on the other side of the house; I got the stuff and she cooked it and we boarded together." The defendant testified more in detail as to this arrangement and plaintiff did not question its accuracy. She said: "Mr. Keesey came there (to the New Hampshire Street house) and said he would come and live there; that he would live on one side and I on the other. I said 'Which side do you want'? he said he wanted two rooms and a kitchen. He said I could have two rooms and I said 'all right.' Then he said he would get the groceries and stuff to eat if I would' cook it and I said I was willing." This arrangement was carried out until March, 1907, the house being so occupied by them, she preparing the meals which they ate together. While they were living at this residence plaintiff was ill for some time, confined to his bed from the effects of an old gunshot wound in his leg. During this period he was under the care of a doctor and defendant waited on him, giving him his medicine, treated and dressed his wounded leg and prepared and brought his meals to his room.

In March, 1907, apparently without any previous discussion between the parties on the subject, plaintiff told defendant that he was going back to Arroyo Grande in San Luis Obispo County, where he had some property upon which several years previously the parties had lived. As to this intended departure plaintiff testified: "I told her I was going back to Arroyo Grande. I did not ask her to go with me; she had said she would never live with me any more the day they had the fight in Mrs. Hill's house. I packed up the furniture in the house before I went to Arroyo Grande. . . . I took all the furniture there was in the house both on her side and on my side. I think there were the springs on the cot and an old oil stove left. . . . As soon as I could get them to the depot and shipped I went back to Arroyo Grande and I still live there." The defendant testified as to the departure of plaintiff: "He said he was going to move to Arroyo Grande and was going to take the things out of the house but he did not ask me to go with him. I was willing to go with him and live with him if his daughter would leave us alone. . . . He said that he would not live with me any more. When Mr. Keesey went to Arroyo Grande the last time in March, 1907, he said: 'You are not to

go with me,' and he said 'in a year I will get a divorce from you on the ground of desertion,' and I agreed to it." These statements of the defendant were not denied by plaintiff and, in fact, they agreed in the main with the testimony of plaintiff. Defendant further testified that she stayed at the house until all the things were packed and there was not a thing left for her to sleep on or cook with or anything to eat. "I was willing to go to Arroyo Grande with him if he asked me. I would have lived with him at any time up to the time he filed the suit and would now but not with his daughter." It further appears from the testimony of defendant and not contradicted by plaintiff that after this suit for divorce was brought plaintiff visited defendant several times at her residence in Pasadena. These visits were friendly and somewhat prolonged, the plaintiff at the invitation of defendant remaining to have supper with her. When he visited her he asked her if she would not agree to let him have a divorce which she declined to do, stating that she did not think he was entitled to it.

A witness on behalf of plaintiff testified that while the parties were both living at the New Hampshire Street house she heard the defendant say that she would never live with plaintiff again and he said that it was no use for them to try and live together. These statements were not denied by either party. Another witness testified that at the same residence while the parties were living together defendant desired her to ask plaintiff if he would live with her again, which she did, and plaintiff answered that he would not; that he was going to pack up everything and take them to Arroyo Grande.

This presents all the material evidence in the case. No property question was involved and the little evidence respecting property shows that each of the spouses was possessed of separate means. It appears that there was no very serious quarrels between the couple. Plaintiff himself testified "she never mistreated me much." Neither of them mentioned any trouble between them except the altercation at the residence of the daughter in December, 1906, which seems more to have involved Mrs. Hill and the defendant than the plaintiff. He testified that his wife was of a very violent temper; she said nothing against him; but the daughter testified in an indefinite way that most of the quarrels between the parties were about investments in real estate.

On this appeal the reply of respondent to the claim of appellant that there is no evidence to sustain the finding of desertion is that the record shows that on this subject the evidence was conflicting and for that reason the finding cannot be disturbed here. But we do not perceive any conflict in any material evidence. The evidence appears to us to be all one way and to show that if there was desertion at all that in fact and in law it could more reasonably be asserted to be the desertion of defendant by plaintiff.

"Willful desertion is the voluntary separation of one of the married parties from the other with intent to desert" and is manifested ". . . by the refusal of either party to dwell in the same house with the other party when there is no just cause for such refusal." (Civ. Code, secs. 95, 96.) "Separation by consent with or without the understanding that one of the parties will apply for a divorce is not desertion." (Civ. Code, sec. 99.)

The allegation of the complaint which the court found was sustained by the evidence is that: "On or about the month of December, 1906, . . . defendant . . . willfully . . . deserted and abandoned plaintiff and . . . still continues without cause to desert and abandon plaintiff and to live separate and apart from him without sufficient cause . . . and against his will and without his consent."

To constitute the offense of desertion as alleged the evidence must show that the defendant voluntarily separated from the plaintiff; that she had refused to dwell with him in the same house without any just cause for the refusal and that this was done with intent to desert the plaintiff. It is quite clear that the evidence fails entirely to measure up to these requirements. It is obvious from the allegations of the complaint and the testimony of plaintiff on the trial that his sole claim of desertion on the part of defendant is that following the altercation at the residence of the daughter of plaintiff in December, 1906, and when she was ordered out of the house by the daughter she declared to plaintiff that she would never live with him again and that from that day she had never done so. But in the light of events subsequent to this declaration by defendant, which was made, doubtless, in an angry moment when smarting under the indignity of being ordered from his daughter's home without any protest on the part of plaintiff, the fact is

that within a month after defendant went to the New Hampshire Street house their matrimonial cohabitation was resumed; they dwelt together there and this cohabitation continued up to the time that plaintiff departed for Arroyo Grande. It is of no moment that the parties occupied different parts of the house and did not occupy the matrimonial bed. Plaintiff dictated when he came there to live with defendant how they should occupy the rooms in the house; he made no request that the matrimonial cohabitation should be any different than what it was, while on the part of defendant she testified that he might have occupied her room with her had he so wished. But whether he occupied her room or not there was a general cohabitation resumed between them at his solicitation after she took up her residence at the New Hampshire Street house; they occupied the same house and their relations were perfectly amicable; they ate their meals together, which in the discharge of her wifely duties she prepared, and in his illness she affectionately ministered to his wants.

Under these conditions and without any cause whatever for doing so the plaintiff stripped the house of all its furniture—both on her side and his—leaving her nothing but "the springs on the cot and an old oil stove," and without asking her to accompany him left the house and her and took up his residence on his property at Arroyo Grande. He not only did not, as in the discharge of his legal duty to his wife he should have done, require her to accompany him but according to her statement (which he does not deny) left her with a declaration on his part that she was not to go with him and that in a year he would get a divorce from her on the ground of desertion.

Under these unquestioned facts in the case there is no room for any claim that defendant was guilty of desertion of plaintiff.

But it is said that there was testimony that defendant had declared while she and plaintiff were occupying the New Hampshire Street house that she never would live with plaintiff again. But that testimony amounts to nothing. When this declaration was made, as was also his declaration to the same effect, they were then actually dwelling together in the same house and her declaration of what she would not do in the present case simply did not accord with the fact of what she was then actually doing.

Nor is the uncontradicted testimony of defendant that plaintiff said when he left that she was not to go with him and that in a year he would get a divorce from her and that she agreed to it of any moment at all in establishing desertion on her part. On the contrary this evidence would only establish separation by consent with the understanding that one of the parties would apply for a divorce which the code expressly declares would not constitute desertion. (Civ. Code, sec. 99.)' It would also establish a collusion which would preclude the granting of a divorce to either party. (Civ. Code, sec. 114.)

The decree and order appealed from are reversed.

Henshaw, J., and Melvin, J., concurred.