[Civ. No. 3507. Third Appellate District.—May 29, 1928.]

MINNIE C. BROWN, Appellant, v. RUDOLPH J. BROWN, Respondent.

Loyal C. Kelley, Marshall Stimson and W. G. Irving for Appellant.

Dryer, Castle & Hartke for Respondent.

TUTTLE, J., *pro tem.*—The complaint in this action is based upon a charge of cruelty. The cross-complaint consists of two causes of action, the first being desertion, the second cruelty. The court found against the plaintiff and appellant as to all of her allegations of cruelty, and in favor of the defendant and respondent as to all of his allegations of cruelty, and in his favor on his charge of desertion against the plaintiff and appellant. The interlocutory decree of divorce was granted to the defendant and respondent specifically on the charge of desertion against the plaintiff and appellant.

The appeal is based entirely upon the ground of insufficiency of the evidence; first, on the ground that the evidence is insufficient to support the findings of the trial court as specified in paragraph 14 of the findings of fact, that on or about February 2, 1922, the plaintiff and appellant, without cause, wilfully deserted the defendant and respondent; and, secondly, that the evidence is insufficient to support the finding of the court, that the plaintiff and appellant is not a fit and proper person to have the custody of the minor children of plaintiff and defendant, as specified in appellant's opening brief.

The appellant and respondent were married on August 29, 1914. At the time of their marriage, and prior thereto, it was understood that they would live upon a ranch near Wildomar, in Riverside County. Appellant knew during the period of their courtship that the respondent was a rancher, and it was planned that they would live on the ranch above mentioned. Soon after their marriage the appellant became discontended and dissatisfied with her situation and life on the ranch, and began complaining about the conditions there, and her own condition, which dissatisfaction and complaints continued through the entire time that the parties resided together on the ranch at Wildomar.

Four children were born to the parties during their life together: Wilfred Brown, a son, born December 9, 1915, David Brown, a son, and Catherine Brown, a daughter, twins, born September 15, 1918; and Gerald Brown, a son, born October 6, 1921.

It is undisputed that the appellant left the home of the parties at Wildomar, on February 2, 1922, at a time when the youngest child was between three and four months old, and there is evidence to show that the appellant was not ill at the time she left, but, on the contrary, that there was nothing wrong with her at that time, and that she was perfectly normal; that, according to her own statement, she had wired to her mother a few days previous thereto to come and get her, and that after her mother arrived they hurriedly decided to leave at once; that the appellant left early in the morning, at approximately 6 o'clock and in inclement weather, and that at the time she left she or her mother had represented and stated to the respondent that she would return in two months, and, according to her own statements, that it was definitely understood that she was to be absent only for a period of two months with her mother, after which time she would return to the ranch.

On the morning of her departure she made no effort to take the baby with her, which astounded and surprised the respondent and a Mrs. Soules, who had been brought in by appellant's mother to, as she thought, help get the children ready to go with their mother, the appellant, and the appellant at this time flatly refused to take the baby with her, even though the baby had not yet been weaned, and had up to that time been nourished by receiving milk from its mother's breast.

Appellant made no provisions for the care of the baby, which she had nursed up to that time, and left no instructions in reference to its care or comfort.

The appellant left the home of respondent on February 2, 1922, leaving the three youngest children in his care and custody, without any previous arrangement for their care, without any instructions as to their food or comfort, and without any questions as to how they would be taken care of.

According to her own testimony, she did not return to the ranch to see the children from February 2, 1922, until

June, 1924, at which time she returned with her mother and her attorney without any intention of remaining at the ranch or taking up her duties as a mother of the children and wife of the respondent. She made no offer to return and stay on the ranch, or do anything that showed any intention to terminate the period of separation.

It is undisputed that she did not return to the ranch or make any effort on her own part to see the children during this entire period of more than two years and four months, after having left an unweaned baby in sole care of the respondent.

Various physicians testified as to their opinion to the effect that she was a hypochondriac or a psycho-neurotic of the sexually perverted type, inclined to dwell upon sex matters and become centered upon matters having to do with various phases of sex questions, the result of which was to blunt the maternal instinct, and that such condition affected the care of the children. This conclusion, expressed in different forms by the various physicians, was arrived at as a result of their own personal experience in treating her, and also as a result of the other testimony and evidence presented during the trial and embodied in a hypothetical question to them. Some of them said that the influence of such a person over children was detrimental, and that the condition was progressive and would continue to get worse instead of better; that such a person became self-centered and egotistical, and dwelt upon sex questions, and often made a very scientific study and research of sex conditions and matters, as was evidenced by the letters written by the appellant. These letters, as stated before, contradict all the accusations made by the appellant against the respondent in reference to his treatment of her, and indulge in a detailed discourse and discussion of sex matters.

The appellant was examined at various times by physicians after her emphatic contentions that she was suffering to a great extent from the results of improper treatment by physicians, and upon each of such examinations the physicians found that she was normal.

During the period of her absence, although, according to respondent's testimony, she stated that she only intended to go to Los Angeles for a period of two weeks or two months, at which time she expected to return to the ranch, she never-

theless not only went to Los Angeles for a period of two weeks but proceeded with her mother to Berkeley, San Francisco, Oakland, San Jose and several other places, during part of which time she, according to her own testimony, walked about, did housework, and even engaged in certain occupations, such as canvassing and soliciting orders from university students at Berkeley for a period of time.

The trial of the action consumed some three weeks. Fifty witnesses were examined, and the record of the testimony is spread over some two thousand pages.

■ As to the first point raised by appellant—the insufficiency of the evidence to support the finding on the ground of desertion—it is earnestly contended the judgment must be reversed because there is no testimony to the effect that appellant ever intended to desert respondent. Desertion is defined by section 95 of the Civil Code as follows: ''Wilful desertion is the voluntary separation of one of the married parties from the other with intent to desert.'' Both parties admit that the original separation was by mutual consent. Respondent and appellant talked over her proposed visit to her mother in Los Angeles some time before appellant left the ranch. Appellant then stated that she intended to take Christian Science treatments while away, and it was understood that she would be gone some two weeks or two months. She left on February 2, 1922, and did not return to the ranch until June, 1924, at which time she did not indicate any intention of remaining, but simply made a brief visit of a few hours, in company with her attorney. Respondent contends that the evidence establishes a separation by mutual consent, and relies upon the case of *Borden* v. *Borden,* 166 Cal. 469 [137 Pac. 27], where it is held that where separation is had by mutual consent of the parties, there can be no desertion unless something thereafter transpired. In the instant case it will be observed that there is evidence that the separation agreed upon was not absolute, but was limited to a definite period of time. The remarks of the court in the Borden case are predicated upon a state of facts which showed an absolute and unqualified understanding to separate without any limitation as to time. The cases of *Keesey* v. *Keesey,* 160 Cal. 727 [117 Pac. 1054], and *Sargent* v. *Sargent,* 106 Cal. 544 [39 Pac. 931], are to the same effect ·

as the Borden case, and are not applicable to the instant case for the same reasons.

Section 100 of the Civil Code provides: "An absence or separation, proper in itself, becomes desertion whenever the intent to desert is fixed during such absence or separation." It follows therefrom that a separation, proper in itself, may become and constitute desertion as a ground for divorce, where the intent to desert thereafter becomes fixed. The question as to whether or not the intent thereafter became fixed depended upon all the facts and circumstances which transpired subsequently, and the statements, admissions, acts, and conduct of the party charged with such desertion. "It is for the court, trying the case, to determine from all the facts and circumstances appearing in the case, whether or not there was an absence of that consent to living separate and apart which is essential to constitute desertion." (*McMullin* v. *McMullin*, 140 Cal. 112 [73 Pac. 808].) There is also evidence of the persistent refusal of appellant to dwell in the same house with respondent, with no just cause for such refusal. This constitutes desertion. (Civ. Code, sec. 96.) Respondent was under no legal obligation to request his wife to return or intimate to her that her absence from home was objectionable to him. (*Morrison* v. *Morrison*, 20 Cal. 431.) The evidence, as we have stated, was to the effect that her absence was to continue for a definite period of time, the longest period testified to being two months. She remained absent for two years and four months, and this, with the other facts and circumstances in evidence, justified the court in finding that she deserted respondent. ■

A very large portion of appellant's argument is taken up and consumed in an effort to persuade the court to interfere with findings of fact which are supported by substantial evidence. A fair illustration of such an instance is with reference to the physical condition of appellant. To excuse the said desertion of appellant, it is urged that she left her said home and remained absent because she was ill and in very poor health. There is considerable testimony to that effect. However, her husband, several neighbors and a doctor testified that she was in normal health when she left the home, and that there was nothing wrong with her physically. In commenting upon a similar condition of the record, in the case of *Baker* v. *Baker*, 9 Cal. App. 746 [100 Pac.

897], this court said: "It involves only a waste of time to undertake to demonstrate to an appellate court in a case in which there exists at least a substantial conflict in the evidence that the testimony offered by the party against whom the findings have been made by the court below should be accepted in preference to that from which such findings have been deduced." It would serve no useful purpose for us to further elaborate upon the testimony. We are satisfied from a careful examination of the record, that the said finding of the trial court is based and founded upon substantial evidence, and under such circumstances we are powerless to disturb the same. (2 Cal. Jur., p. 921, sec. 543.)

An attack is made upon the finding of the court that appellant is not a fit and proper person to have the custody of the minor children of the parties. This finding is as follows: "That it is true that by reason of the character and disposition of plaintiff, and evidenced by her actions and conduct as herein set forth, that plaintiff is not a fit and proper person to have the custody of the minor children of plaintiff and defendant, or any of them." It is contended by appellant that this finding is not one of ultimate facts and that it can only receive support from the particular probative facts found by the court. In effect, she argues that though there may be abundant proof in the record showing the mother to be an unfit and improper person to have the custody of said minors, nevertheless, unless the court included all these evidentiary facts in its findings, they cannot be considered in support thereof. This rule of construction is contrary to the well-established principle frequently announced by the appellate courts of this state, that on appeal the findings must be construed liberally, and that uncertainties therein are to be given such a construction as will uphold rather than defeat the judgment. (2 Cal. Jur., p. 871, sec. 511.) According to this rule the finding must be viewed as finding ultimate facts, and it was not necessary for the trial court to have expressly found all the probative facts, as such finding includes a finding upon all probative facts necessary to sustain it. The mere fact that the court expressly found certain probative facts does not thereby operate to exclude all other probative facts appearing in the record and tending to support the general finding. The court found that appellant was not a fit and

proper person to have the custody of said minors. This was a finding of the ultimate fact. The supreme court has held that in a guardianship proceeding where the question of the competency of a person was in issue, a finding that said person was incompetent was one of the ultimate fact, and no further findings were required. (*Estate of Espinosa*, 179 Cal. 189 [175 Pac. 896].)

The evidence shows that appellant abandoned her four minor children suddenly and without making any provisions whatever for their care during her absence. Her baby, but three months of age, who was receiving nourishment from her mother's breast, was deserted with apparently no indications of those maternal instincts which are the normal and natural traits and characteristics of every mother. As one of the medical experts testified: "In my opinion a normal mother would come back to her baby if she had to walk backwards and on her hands and knees." She did not come back until over two years had elapsed. Aside from this evidence of abandonment, there is the testimony of numerous medical experts to the effect that appellant was selfish and self-centered; that she dwelt insistently upon imaginary ailments connected with her reproductive organs, that she was in such a psycho-neurotic condition that sex perversion resulted. We do not feel called upon to go into the evidence upon these questions in any further detail. Letters written by appellant were introduced in evidence. These, alone, in our opinion, would justify the conclusions of the trial court upon this issue. As we stated with reference to the question of desertion, it is idle to attempt to impose upon an appellate court the duties, prerogatives, and exclusive functions of the trial court in the matter of findings of fact. It must be patent and apparent that there is substantial evidence to support this finding. But in addition to this, the matter under consideration was one in which the law commits to the trial court a very large measure of power. (*Bancroft* v. *Bancroft*, 178 Cal. 352 [173 Pac. 582].) With respect to the custody of children in divorce proceedings, it is manifest that the legislature, by section 138 of the Civil Code, intended to confide to the trial courts a very extensive discretion, with a view to the conservation of the highest and best interests of such minors, and the conclusion arrived at by such court in such

cases will not be disturbed unless the record discloses a clear abuse of that discretion. (*Nave* v. *Nave*, 35 Cal. App. 27 [169 Pac. 253].) No serious contention is made here that the trial court abused its discretion in making the order complained of, nor do any grounds for such contention appear.

We can see no merit in the questions raised, and, accordingly, the judgment is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.